CITY OF EXCELSIOR SPRINGS and Land Clearance for Redevelopment Authority of Excelsior Springs, Respondents,

v.

ELMS REDEVELOPMENT CORPORATION, Elms Inn Partners, Elms Hotel Associates Limited Partnership, The Elms of Excelsior Springs, Inc., Robert L. and Carol S. Bisbee, Elms Timesharing Intervals, Inc., Elms Hotel Operating Company, James A. Ash, Laramie Insurance Company, the Industrial Development Authority of the City of Excelsior Springs, Boatmen's First National Bank of Kansas City, Anthony G. Sommers, City of Excelsior Springs, John W. McClelland, Richard E. Morrison, CCDC Financial Corporation, Historic Kansas City Foundation, Pat Vagino, Jessica Vagino, Wendall Swenson, Alice Swenson, Paul E. Bell, Richard Buchli, Robert Burns, Roger A. Fisher, Richard Hernandez, D. Bradford Johnson, Billy Joe Kitterman, Kris W. Leiby, M. Chris Scholdberg, The Department of Revenue of the State of Missouri, Collector for the City of Excelsior Springs, and Collector for Clay County, Defendants,

and

Linda Snider, Albert Teepen, Barbara Teepen, Dennis Murphy, Lea Muprhy, Robert Carver, Donna Carver, Fred Thorp, and Ruth Thorp, Appellants.

No. WD 54862.

Missouri Court of Appeals, Western District.

March 28, 2000.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 2, 2000.

Application for Transfer Denied June 27, 2000.

Julie J. Gibson, Angela Green, John
Waldeck, Kansas City, for appellants.

Douglas Richmond, David Barnard, Brian Engel, John McClelland, Kansas City, for respondents.

PAUL M. SPINDEN, Judge.

Nine members of a class of more than 850 persons who bought a right to stay at the Elms Hotel in Excelsior Springs for one to two weeks a year appeal the circuit court's decision to deny their motion to set aside its judgment in a condemnation action. The appellants contend that the judgment was void because only nine members of their class received individual notice of the proceedings and because those individuals did not represent their interests adequately. We handed down an opinion on October 20, 1998, reversing the circuit court's judgment, but we granted the motion of Excelsior Springs' municipal government and its Land Clearance Redevelopment Authority (LCRA) for a rehearing to clarify our holding. We withdrew our opinion of October 20, 1998, and issued a new opinion on February 2, 1999, reported at 984 S.W.2d 887 (Mo.App.1999).

 Now, because of an error in our directions to the circuit court on remand, we recall our mandate, on our own motion, and issue this new opinion. We may recall our mandate to correct errors that occurred in appellate proceedings. *State v. Edwards*, 983 S.W.2d 520, 522 (Mo. banc 1999). The parties in this case have returned to this court in a companion case, see *City of Excelsior Springs v. Elms Development Corporation*, 18 S.W.3d 61 (Mo. App. 2000), essentially complaining about the circuit court's decision concerning the directives of our mandate which we issued in this case. Recalling a mandate on our own motion is unusual, but we do so in this case because the case has not reached a final disposition and the error has been called to our attention. In these unusual circumstances, we recall our mandate to correct this error.

The evidence established that the class consists of persons who paid $5000 to $10,000 for the right to stay at the Elms Hotel for one to two weeks a year for 30 to 50 years, depending on their individual agreements. Elms Timesharing Intervals, Inc., leased a portion of the hotel in 1983 from Elms Hotel Operating Company and began selling the hotel stay plans, called Gold Key Club memberships. Members paid a lump sum for the Gold Key Club memberships. They stayed in rooms leased to Elms Timesharing Intervals, and their getting a room for a particular time depended on Elms Timesharing Intervals' having a room available. Neither the week of the year nor a particular room was predetermined. The circuit court and the parties referred to these plans as "timesharing" arrangements.[1] To resolve this dispute, however, we need only determine whether the Gold Key Club members make a colorable argument that their memberships constituted a property interest.

The hotel quit honoring the members' right to stay at the hotel in 1996 after Excelsior Springs' municipal government and LCRA, which the city established to rehabilitate the hotel, obtained the circuit court's condemnation of the hotel. The city and LCRA concluded that the condemnation terminated the Gold Key Club members' rights.

---

1. The circuit court did not resolve the issue of what, exactly, the Gold Key Club members' interest was. It does seem to satisfy the General Assembly's definition of a "time-share plan" in § 407.600(11), RSMo 1994: "[A]ny arrangement, plan, scheme or similar device, other than an exchange program, whether by membership, agreement, tenancy in common, sale, lease, deed, rental agreement, license, right-to-use agreement or any other means, whereby a purchaser, in exchange for a consideration, receives one or more time-share periods, or any type of interval or joint ownership in, or a right-to-use, any accommodation or facility for a period of time which is less than a full continuous and uninterrupted year during any given year, and which extends for a period of more than three years, as to each individual time-share development subject to the purchase[.]"

The city's and LCRA's petition seeking condemnation, filed on August 29, 1995, named nine purchasers of Gold Key Club memberships as representatives of a class of all club members.[2] As ordered by the circuit court, the city and LCRA published notice of the condemnation in an Excelsior Springs local daily newspaper three times during September 1995. The notice described the property and hearing schedule, and it identified the nine representatives of the class of Gold Key Club members. Six of the nine class representatives filed answers to the petition.[3] Only one, Richard Buchli, was assisted by a lawyer. Buchli's son, a lawyer, appeared for Buchli and clarified that he was representing only his father's interest. All of the other Gold Key Club members' averments were identical:

> [T]his Defendant is specifically not capable of ascertaining whether or not members of the Gold Key Club should be treated as "class" for purposes of this litigation at this time and, without some specific orders of limitation and protection from this Court, is not financially capable of representing the interests of all of those persons who might be included in such "class."

The city and LCRA asked the circuit court to certify the Gold Key Club members as a defendant class.

The circuit court held a hearing to consider certifying the class. Only three of the six persons who had filed answers appeared at the hearing,[4] and only Buchli had an attorney. The three persons who had not filed answers appeared, *pro se*, at the hearing.[5] The circuit court certified the class as meeting the requirements of Rule 52.08(b)(1) but still ordered the city and LCRA to notify each class member

individually of the proceedings. The city and LCRA did not obey the circuit court's order; they did not notify any of the absent Gold Key Club members. At the same hearing, the circuit court condemned the Elms Hotel and the other property in what the city and LCRA called the Elms Neighborhood Redevelopment Area. The circuit court appointed commissioners to appraise the property. The commissioners later assessed the net damage for the condemned property at $675,000. No one filed any exceptions to their report.

On July 31, 1996, the circuit court declared that the city and LCRA were beneficiaries of six deeds of trust encumbering the property in the redevelopment area and that they held a lien against the property for unpaid real estate taxes. In its order, the circuit court said:

> ... The liens of the ... deeds of trust and unpaid taxes are prior and superior to the interests of all other parties named in the condemnation petition. The outstanding principal balance of the obligations secured by the deeds of trust is in excess of $20 million.

> ... On March 19, 1996, the Commissioners Award pursuant to Section 523.040 RSMo. was duly entered and filed in this cause in the amount of $675,000.00. No exceptions were filed, and the award is now final.

> ... Since the rights and interest of the City and LCRA in the condemned property are prior and superior to the rights of all other parties named in the condemnation petition and exceed the total amount of the final award, the City and LCRA should be allowed to credit the amount of the award against the amounts due the City and LCRA under the deeds of trust and liens[.]

---

2. They were Paul E. Bell, Richard Buchli, Robert Burns, Roger A. Fisher, Richard Hernandez, D. Bradford Johnson, Billy Joe Kitterman, Kris W. Leiby, and M. Chris Scholdberg. A city official obtained the names by culling through Elms Timeshare Intervals' records.

3. They were Buchli, Fisher, Kitterman, Bell, Johnson, and Burns.

4. They were Bell, Buchli, and Burns.

5. They were Hernandez, Leiby, and Scholdberg.

... The Courts [sic] finds that no persons or corporations other than the defendants named in the condemnation petition have any interest in the award.

The Gold Key Club members who were not involved in the proceedings apparently did not learn of the condemnation and its effect on their rights until a few months later when Doug Morrision, Elms Resort Hotel's general manager, sent a letter to them. The letter said:

The City of Excelsior Springs, Missouri and the Land Clearance for Redevelopment Authority of the City of Excelsior Springs, Missouri ("LCRA") recently completed condemnation of The Elms Hotel and related properties. The interests of Elms Timesharing Intervals, Inc. and the members of The Gold Key Club at the Elms Hotel were terminated in the condemnation action.

The LCRA has assumed operation of the hotel, and intends to transfer ownership to a new developer who will commence a complete renovation. It is presently anticipated that the developer will close the hotel for renovation on or about November 1, 1996. The LCRA cannot accept new reservations for use of units at the hotel either from the Gold Key Club members or through any exchange program with Interval International. To minimize the inconvenience to those who have already made reservations, the LCRA will honor any existing reservations for use of rooms through October 31, 1996. Unfortunately, reservations for use of rooms after that date cannot be honored.

On July 31, 1997, 11 Gold Key Club members[6] asked the circuit court to set aside its judgment pursuant to Rule 74.06(b) on the ground that the circuit court's actions in establishing the class were void or irregular. The circuit court held a hearing on the motion on August 26,

1997, and denied it. In announcing its decision, the circuit court said:

... I see this sort of broken down into two parts even though there are a number of different areas raised by the movants and the responsive pleadings.

The first part which I do find frustrating is that I agree ... with the movants. There was not an attorney representing the class and this [Richard] Buchli[,] or whoever he was[,] was only here on behalf of one party, and there was a lot of confusion about the notice. Perhaps I should have been a lot more definite at the time and been specific about, "you shall mail out written notice to each one of the known timeshare owners and in addition to that publish for the unknown ones." Frankly, in my mind I thought that's what was going on. Obviously it's not what was going on. So over on this one side I find ... what should have happened is that we should have gotten notice out better and we should have probably had an attorney maybe even handling that notice and representing the class....

However, there is another half to this[,] and that's why I asked them in the first place where do you really want to go with this....

I remember even having testimony and even some rather heated testimony about what this timeshare was. I believe we had testimony that it was air[, as opposed to a specific square footage]. Somebody testified ... that, "I sold air to people; that was what I did." ...

... But then I started researching the law and listening to arguments and determined basically that that's sort of what a timeshare really is and that it is a right but not a right as a literal property right.

. . . .

... I determined that I know why the timeshare people are not spending their

---

**6.** They were Linda Snider, Robert Carver, Donna Carver, Dennis Murphy, Lea Murphy, Fred Thorp, Ruth Thorp, Albert Teepen, Barbara Teepen, Ronald Tavernaaro, and Barbara Tavernaaro.

time hiring lawyers and coming in here and fighting this because they're fighting for something they can't get anything of. They're fighting for air....

Nine of the movants[7] appealed the circuit court's denial of their Rule 74.06(b) motion and the judgment condemning the property. The city and LCRA asked us to dismiss the parts of the appeal challenging anything but the circuit court's denial of the Rule 74.06(b) motion on the ground that the time for appeal had expired and this court lacked jurisdiction. We granted the motion.

The appellants contend that the circuit court erred in refusing to grant their motion to set aside the judgment because they did not have actual notice of the proceedings and were not represented adequately by the class representatives. This, they contend, violated their due process rights guaranteed by Missouri's and the United States' constitutions.

Missouri's constitution guarantees "[t]hat no person shall be deprived of . . . property without due process of law"[8] and mandates "[t]hat private property . . . not be taken or damaged for public use without just compensation."[9] The United States' constitution prohibits a state from depriving "any person of . . . property . . . without due process of Law,"[10] and prohibits the government from taking private property for public use "without just compensation."[11] The Fourteenth Amendment to the United States Constitution makes the Fifth Amendment's "taking" clause applicable to Missouri. *Penn Central Transportation Company v. City New York*, 438 U.S. 104, 122, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978), and *Chicago, Burlington and Quincy Railroad Company v. City of Chicago*, 166 U.S. 226, 239, 17 S.Ct. 581, 41 L.Ed. 979 (1897).

The Gold Key Club members were not, by statutory definition, necessary parties to the condemnation action. Section 523.010.3, RSMo 1994, made applicable to this action by § 99.460.1, RSMo 1994, says, "It shall not be necessary to make any persons party defendants in respect to their ownership unless they are either in actual possession of the premises to be affected claiming title or having a title of the premises appearing of record upon the proper records of the county." The city and LCRA, however, named representatives of the Gold Key Club members as representatives of a class of all club members, apparently because they sought to foreclose any claim the club members had to use the property.

■ If a party holds a compensable interest in property, two distinct constitutional rights arise; the right to notice and to participate in the condemnation proceeding consistent with due process, and the right to compensation for the value of any property interest taken. *Bi–State Development Agency of the Missouri–Illinois Metropolitan District v. Nikodem*, 859 S.W.2d 775, 779 (Mo.App.1993). See also *Millhouse v. Drainage District No. 48 of Dunklin County*, 304 S.W.2d 54, 57 (Mo. App.1957).

■ Although the Gold Key Club members may not have had an interest in specific square footage at the Elms Hotel, they had an interest in the property nonetheless, and the city's and LCRA's condemnation action threatened that interest. Property is not merely real property. It encompasses "everything which is the subject of ownership, corporeal or incorporeal, tangible or intangible, visible or invisible, real or personal[—]everything that has an exchangeable value or which goes to make

---

**7.** They were Linda Snider, Albert Teepen, Barbara Teepen, Dennis Murphy, Lea Murphy, Robert Carver, Donna Carver, Fred Thorp, and Ruth Thorp.

**8.** Art. I, § 10.

**9.** Art. I, § 26.

**10.** Amend. XIV.

**11.** Amend. V.

up wealth or estate." BLACK'S LAW DICTIO- NARY 1216 (6th ed.1990). "It extends to every species of valuable right and inter- est, and includes real and personal proper- ty, easements, franchises, and incorporeal hereditaments, and includes every invasion of one's property . rights by actionable wrong." *Id.* In *Hoffmann v. Kinealy,* 389 S.W.2d 745, 752–53 (Mo. banc 1965) (foot- notes and citations omitted), the Supreme Court said:

> Property is defined as including not only ownership and possession but also the right of use and enjoyment for law- ful purposes. In fact, "[t]he substantial value of property lies in its use." It follows that: "[t]he constitutional guar- anty of protection for all private proper- ty extends equally to the enjoyment and the possession of lands. An arbitrary interference by the government, or by its authority, with the reasonable enjoy- ment of private lands is a taking of private property without due process of law, which is inhibited by the Constitu- tion."

Indeed, the General Assembly, in § 99.320(16) governing LCRA actions, de- fined "real property" as "property of any nature appurtenant thereto, or used in connection therewith, and every estate, in- terest and right, legal or equitable, there- in[.]"

Because the city's and LCRA's action threatened the members' property inter- est, due process required that all of the members receive either adequate repre- sentation or actual notice of the condemna- tion action. The absent members received neither.

The only notice which all but the nine named Gold Key Club members received was the notice published in the newspaper. The circuit court declared that the nine named individuals could represent the in- terests of all of the other club members, but it ordered the city and LCRA to give actual notice to the absent members. Whether the circuit court's additional step of ordering actual notice to all of the Gold Key Club members was necessary depend- ed on the ability of the nine to represent the interests of the absent club members.

 In a class action, notice is a func- tion of adequate representation: Notice's function is to ensure effective representa- tion. If a class is cohesive in its interest, minimal notice is required. *State ex inf. Ashcroft v. Kansas City Firefighters Local No. 42,* 672 S.W.2d 99, 120–21 (Mo.App. 1984). This is because special defenses or interests are much less likely to crop up in a class having cohesive interests, and this diminishes concern that each member of a class has an opportunity to be present. *Id.* at 121.

 The Gold Key Club members were a cohesive class. Their interests appeared to be uniform as manifested in the identi- cal averments of the six individuals who responded to the city's and LCRA's peti- tion. Assuming that these persons were able to represent the class' interests, the circuit court had little cause for concern that notice was effectuated by publication in a local newspaper. The circuit court, however, was obligated to consider the representatives' ability to represent the class. Rule 52.08(d) says:

> In the conduct of actions to which this Rule applies, the court may make appro- priate orders:
>
> . . . .
>
> (2) requiring, for the protection of the members of the class or otherwise for the fair conduct of the action, that notice be given in such manner as the court may direct to some or all of the mem- bers of any step in the action, or of the proposed extent of the judgment, or of the opportunity of members to signify whether they consider the representa- tion fair and adequate, to intervene and present claims or defenses, or otherwise to come into the action[.]

Although Rule 52.08(d) makes notice a dis- cretionary—rather than a mandatory—is- sue, several commentators have noted that defendant class actions such as this one

present special due process concerns and require the court to be more diligent in assuring that the class is adequately and fairly represented. Addressing the special issue of defendant classes in Fed.R.Civ.P. 23, the federal counterpart to Rule 52.08, Professor Charles Wright said:

> [T]he test for adequate representation of a defendant class is similar to that employed to determine whether a plaintiff will fairly protect the interests of the class members[.] The defendant class member or members named and served by plaintiff must be represented by qualified counsel and they must have common interests with and not be antagonistic towards their fellow class members.... [S]ome courts have noted that closer scrutiny is necessary in determining the adequacy of the representation of a defendant class because of the risk that plaintiff [in selecting the named representatives] will seek out weak adversaries to represent the class. Of course, if there is any evidence that the defendant representative is not able to or will not vigorously defend the action, then the class should not be certified.

7A Charles A. Wright, Arthur Miller and Mary Kane, Federal Practice and Procedure § 1770 (2d ed.1986). Unwilling class representatives create serious due process concerns. 1 Herbert B. Newberg and Alba Conte, Newberg on Class Actions § 4.47 (1992).

That the circuit court was concerned that the representatives were unable to represent the class perhaps explains why it ordered actual notice. The representatives demonstrated virtually no inclination to represent anyone's interest, even their own. The representatives were not willing representatives of the class. The actual notice, however, never occurred, and the circuit court did not appoint an attorney to serve the class.[12]

Moreover, the circuit court may have caused the class representatives to believe that they were not obligated to take any affirmative steps to protect their interests. The circuit court told them:

> I'm going to just state my understanding also and that is that those individuals that are in the courtroom as well as the three individuals who are not here, basically they're not going to have to do anything unless you so desire. Notices to all 800 plus individuals will come from the [c]ity at the [c]ity's expense. The organization and meetings with the commissioners if the condemnation does proceed down the line will be at the [c]ity's expense. The fees to be paid to the commissioners will be at the [c]ity's expense and any other paperwork, court costs, or filings will all be at the [c]ity's expense. All that the nine individuals will be given a right to or asked to do is if you want to talk to the commissioners in the condemnation and assist them in determining values and be in court if you so desire. After today, there aren't going to be any more court hearings unless there is a knock-down drag-out on some of the valuations. I don't anticipate that you're going to have to do much of anything. It's going to be all up to the [c]ity and I'll put it on their backs at their total expense.

The record suggests that these assurances lulled the named Gold Key Club members

---

12. The city and LCRA make much of Richard Buchli's participation as a lawyer representing his father and assert that he was the class's *de facto* attorney. We disagree. Buchli made clear that he appeared only to represent his father's interest, and the circuit court did not deem him to be acting for the class. Buchli took no action on the class's behalf. His remarks on the record suggested that he was unaware that the city and LCRA sought to terminate his father's rights under the Gold Key Club membership: "I ... think that the potential class members have an interest in this matter which is concurrent with that of the [c]ity and that by helping the class members through this, the [c]ity will also be helped because they will get all the advantage of advertising through these Interval International timeshare exchange groups and all these people that come and talk about the Elms and what a nice place it is to go to."

into believing that their interests were not adverse to the city's and LCRA's interests.

■ Adequacy of representation was clearly lacking. This and the representatives' unwillingness to serve cause us to conclude that the absent Gold Key Club members were deprived of due process. The circuit court's failure to assure that the Gold Key Club members' interests were represented adequately further contributed to the violation of the guarantees of due process. Violating litigants' due process rights results in a void judgment. *Cook v. Polineni*, 967 S.W.2d 687, 690 n. 6 (Mo.App.1998).

The circuit court erred, therefore, in not granting the Gold Key Club members' motion to set aside the judgment. Because the Gold Key Club members were denied the opportunity to be heard, the issue of whether the Gold Key Club memberships were compensable was never adequately litigated in the condemnation proceeding. Both sides point to provisions in the underlying lease agreements and Gold Key Club membership agreements in arguing over the issue of whether the Gold Key Club members had a compensable interest. Given the inadequacy of the Gold Key Club members' representation, we decline to decide the issue. It is an issue which will have to be resolved in future litigation.

We, therefore, remand the case to the circuit court to set aside the final judgment of condemnation and to reconsider its decision in light of the Gold Key Club members' interests. It shall conduct such further proceedings as it deems necessary.[13]

VICTOR C. HOWARD, Presiding Judge, and PATRICIA BRECKENRIDGE, Judge, concur.

---

13. In our February 2, 1999, opinion, we erroneously ordered the circuit court "to dismiss that part of the petition which sought to bind the Gold Key Club members in the condemnation action." The purpose of a condemnation proceeding is " 'to ascertain and acquire title to the land sought for [public] purposes and *to foreclose all outstanding claims and interests that are, or may be, asserted thereto by others.*' " City of Columbia v. Baurichter, 713 S.W.2d 263, 266 (Mo. banc 1986) (quoting *City of St. Louis v. Barthel*, 256 Mo. 255, 166 S.W. 267, 272 (1914)) (emphasis added). Our ordering the circuit court to dismiss the Gold Key Club members from the condemnation proceedings without giving the circuit court the opportunity to determine whether the Gold Key Club members had a compensable interest was wrong. If the Gold Key Club members have a compensable interest, their interest needs to be litigated in the condemnation proceeding.