STATE ex rel. AMERICAN FAMILY
MUTUAL INSURANCE
COMPANY, Relator,

v.

The Honorable Thomas C. CLARK and
The Honorable Edith L. Messina,
Judges of the Sixteenth Judicial Cir-
cuit, Respondents.

No. SC 84610.

Supreme Court of Missouri,
En Banc.

May 13, 2003.

Rehearing Denied July 1, 2003.

Original Proceeding in Prohibition.

Nicholas L. DiVita, David F. Oliver, David L. Marcus, Kansas City, for Relator.

Michael E. Waldeck, Julie J. Gibson, Kansas City, for Respondents.

John W. Bauer, Kansas City, for Amicus Curiae (National Assn. Of Insurance Commissioners).

Bernard L. Balkin, Kansas City, for Amicus Curiae (Ohio Department of Insurance).

WILLIAM RAY PRICE, JR., Judge.

## I.

Plaintiffs sued American Family Mutual Insurance Company ("American Family") for breach of contract on behalf of themselves and similarly situated plaintiffs nationwide. After an eight day hearing, the trial court certified the class. American Family sought relief by way of writ of prohibition. This Court issued a preliminary writ in August 2002, prohibiting the trial court from taking any further action in this case. The writ is made absolute, as modified, for insureds whose contracts are subject to the laws of states other than Missouri.

## II.

American Family writes private passenger automobile property and casualty insurance in fourteen states.[1] The policy promises to "pay loss in money or repair or replace damaged or stolen property." In 1985, American Family established the current guidelines that adjusters follow when writing estimates for replacement parts. For vehicles in the latest three model years, adjusters are instructed to specify Original Equipment Manufacturer ("OEM") replacement parts for repairs. When writing estimates for vehicles of an earlier model year, adjusters are encouraged to specify the use of non-OEM crash parts or salvage OEM parts. OEM parts are those parts made by the original automobile manufacturers or suppliers; non-OEM parts are made by outside companies without access to the design specifications of the OEM parts. American Family now uses computer software to write the estimates. The software automatically specifies non-OEM crash parts for automobiles of certain model years.

This same computer program identifies repairs the vehicle will require. The estimating software systematically excludes from estimates certain repairs deemed necessary by industry standards.[2] Such repairs include seatbelt safety tests, wheel alignments, adjusting the aim of headlamps, and corrosion protection.

Plaintiffs claim that American Family breached its contracts with policyholders to restore their vehicles to pre-loss condition by devising and implementing a practice that results in payment of claims based on (1) the systematic specification of "inferior" non-OEM crash parts for repairs and (2) the systematic omission of specific "necessary" repairs from estimates. Plaintiffs brought the action on behalf of themselves and "all others nationwide, or in the alternative all others in the state of Missouri," who were insured by American Family, made a claim for vehicle repairs pursuant to their policy, and received payment based on an estimate prepared or approved by American Family that included non-OEM crash parts and/or did not include specified "necessary" repairs.

The Circuit Court of Jackson County certified the nationwide plaintiff class. American Family filed an application for writ of prohibition or, in the alternative, mandamus. This Court issued a preliminary writ of prohibition. The writ is made absolute, as modified, as to insureds whose contracts are subject to the laws of states

---

1. American Family writes insurance policies in Arizona, Iowa, Ohio, Wisconsin, South Dakota, North Dakota, Kansas, Illinois, Missouri, Nebraska, Colorado, Oregon, Indiana, and Minnesota.

2. I–CAR, a non-profit organization composed of insurance companies, automobile manufacturers, collision repair facilities and automotive suppliers, has developed industry repair standards since 1979. American Family software does not provide for all the repairs I–CAR recommends.

other than Missouri and quashed as to the class comprised of insureds whose insurance contracts are subject to Missouri law.

### III.

 "Determination of whether an action should proceed as a class action under Rule 52.08 ultimately rests within the sound discretion of the trial court." *Ralph v. Am. Family Mut. Ins. Co.*, 835 S.W.2d 522, 523 (Mo.App.1992). However, if the trial court abuses its discretion in certifying a class, "prohibition may be appropriate to prevent unnecessary, inconvenient, and expensive litigation." *See State ex. rel Linthicum v. Calvin*, 57 S.W.3d 855, 857 (Mo. banc 2001).

### IV.

Certification of a class action requires, at a minimum, that (1) the class be so numerous that joinder of all members is impracticable, (2) questions of law or fact common to the class exist, (3) the claims of the representative parties are typical of the claims of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. Rule 52.08(a). *See also* section 507.070, RSMo 2000. These procedural rules are mandatory. *Beatty v. Metro. St. Louis Sewer Dist.*, 914 S.W.2d 791, 795 (Mo. banc 1995) (citations omitted). Class certification is appropriate only if the prospective class meets each listed element.

### A.

When class claims are governed by the laws of multiple states, it becomes more difficult for the class to show that questions of law common to the class exist. *See Raye v. Medtronic Corp.*, 696 F.Supp. 1273, 1275 (D.Minn.1988) (focusing primarily on whether common questions predominate the proceeding); *Schmidt v. Interstate Fed. Sav. & Loan Ass'n*, 74 F.R.D.

423, 429 (D.D.C.1977) (mem.); *McMerty v. Burtness*, 72 F.R.D. 450, 454 (D.Minn. 1976) (mem.); *Harrigan v. United States*, 63 F.R.D. 402, 405 (E.D.Pa.1974) (mem.). This is especially true when the subject matter of the lawsuit is the interpretation and enforcement of insurance contracts.

 Regulating the business of insurance is clearly within the duties of the separate states. In 1945, Congress explicitly recognized state regulation of insurance though the enactment of the McCarran–Ferguson Act. The act, in pertinent part, states that "[t]he business of insurance, and every person engaged therein, shall be subject to the laws of the several States which relate to the regulation or taxation of such business." 15 U.S.C. § 1012(a). The act applies to "the type of state regulation that centers around the contract of insurance" and governs such questions as "the type of policy which could be issued, its reliability, interpretation, and enforcement". *SEC v. Nat'l Sec., Inc.*, 393 U.S. 453, 460, 89 S.Ct. 564, 21 L.Ed.2d 668 (1969).

 The outcome of this breach of contract action ultimately hinges upon the interpretation of American Family's standard insurance contract. The question of contract interpretation is clearly subject to the McCarran–Ferguson Act. Thus, the laws and regulations of fourteen states must be applied when determining whether American Family breached its contracts with the citizens of those various states by providing estimates based upon non-OEM crash parts and omitting specific repairs.

### B.

While no Missouri court has examined whether class certification is appropriate when the laws of multiple states will apply, other jurisdictions have considered the question. Many courts that have ad-

dressed the issue conclude that the application of varying state laws not common to the class precludes class certification. *See Leszczynski v. Allianz Ins.*, 176 F.R.D. 659, 671 (S.D.Fla.1997); *Indianer v. Franklin Life Ins. Co.*, 113 F.R.D. 595, 606 (S.D.Fla.1986) *overruled on other grounds by Ericsson GE Mobile Communications v. Motorola Communications & Elecs.*, 120 F.3d 216, 220 (11th Cir.1997); *McMerty v. Burtness*, 72 F.R.D. 450, 454 (D.Minn. 1976) (mem.) [3]; *but see* Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 4:25, at 163 (4th ed.2002) (stating that the mere "existence of state law variations is not alone sufficient to preclude class certification").

■ The laws of the fourteen states applicable to the proposed class action against American Family certainly vary. The laws of the several states range from allowing the use of non-OEM parts in a vehicle if the owner is given notice, to forbidding the use of non-OEM parts as a condition to payment of a claim.[4] A kaleidoscope of rules litters the continuum between these two extremes.[5] The record below establishes no Missouri interest in the application of the insurance law of foreign states to their own citizens, neither does the record establish how the application of the laws of fourteen states would be "common" to the class.[6] The trial court abused its discretion in certification of the class with respect to insureds whose contracts are subject to the laws of states other than Missouri.

## V.

Separate analysis is required to determine whether the trial court abused its discretion in certifying a class action for insureds whose policies are subject to Missouri law. In addition to the elements of Rule 52.08(a), plaintiffs must also satisfy one of the three requirements of Rule 52.08(b). The plaintiffs seek class certification based upon 52.08(b)(3), which requires the motion court to find that common questions of law or fact "predominate over any questions affecting only individual members, and that a class action is

3. One federal appellate court recently went so far as to state that "[n]o class action is proper unless all litigants are governed by the same legal rules. Otherwise the class cannot satisfy the commonality and superiority requirements of Fed.R.Civ.P. 23(a), (b)(3)." *In Re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1015 (7th Cir.2002).

4. Arizona, Iowa, Ohio, Wisconsin and South Dakota all permit the use of non-OEM parts in a repair estimate so long as the part used is clearly identified in the estimate or accompanying notice. Ariz.Rev.Stat. Ann. § 44–1292, 1293 (West 1994); Iowa Code Ann. § 537B.4 (West 1997); Iowa Admin. Code r.191–15.15 (507 B); Ohio Rev.Code Ann. § 1345.81(B), (C) (West 1994); Wis. Stat. Ann. § 632.38(2), (3) (West 1995); Wis. Stat. Ann. § 100.44(2) (West 1997); S.D. Codified Laws §§ 32–15–36, 58–33–71 (Michie 1998). Minnesota forbids the use of non-OEM parts as a condition of payment of a claim. Minn. Stat, § 72A.201, subd. 6(7) (2002).

5. For example, Kansas law ordinarily requires non-OEM parts to be clearly identified in the repair estimate, but no restrictions are placed on the use of non-OEM parts for vehicles ten model years of age or older. Kan. Stat. Ann. §§ 50–661, 50–662 (1994); Kan. Stat. Ann. § 50–664 (2000). Colorado permits the installation of non-OEM parts only with the written or oral consent of the customer. Colo.Rev.Stat. Ann. §§ 42–9–107, 10–3–1304, 10–3–1305 (West 1998).

6. Although addressing other issues, the recent case of *State Farm Mutual Automobile Insurance Co. v. Campell*, No. 01–1289, slip op. at 10–11, —— U.S. ——, 123 S.Ct. 1513, 155 L.Ed.2d 585, 2003 WL 1791206 (U.S. Apr. 7, 2003), indicates the constitutional care that must be taken by state courts in cases that exceed the forum state's borders.

superior to other available methods for the fair and efficient adjudication of the controversy."

American Family does not argue that a class of Missouri plaintiffs fails to meet the requirements of Rule 52.08(a). Rather, American Family contends that a class of Missouri plaintiffs does not meet the "predominance" element outlined in Rule 52.08(b)(3). American Family's position is that the action consists of individual breach of contract claims with varying factual circumstances that "swamp" common issues. As a demonstration, American Family states that two factual premises plaintiffs must prove in order to establish liability are (1) that all of the damaged parts at issue in this case for all class members were OEM parts in good condition immediately prior to the respective covered losses, and (2) that all the non-OEM crash parts specified by American Family for repair are inferior to all OEM crash parts. American Family argues that these and other individual inquiries preclude class certification.

■■■ "The 'predominance' requirement . . . does not demand that every single issue in the case be common to all the class members, but only that there are substantial common issues which 'predominate' over the individual issues." *South Carolina Nat'l Bank v. Stone,* 139 F.R.D. 325, 331 (D.S.C.1991) (citing 3B Moore & Kennedy, *Moore's Federal Practice* ¶ 23.06–1 at 23–159, 160). The predominant issue need not be "dispositive of the controversy or even be determinative of the liability issues involved." Alba Conte & Herbert Newberg, *Newberg on Class Actions* § 4:25, at 169 (4th ed.2002). The need for inquiry as to individual damages does not preclude a finding of predominance. *Lewis v. Nat'l Football League,* 146 F.R.D. 5, 12 (D.D.C.1992) (mem.); *see also Freedman v. Louisiana–Pac. Corp.,*

922 F.Supp. 377, 401 (D.Or.1996); *Gaspar v. Linvatec Corp.,* 167 F.R.D. 51, 60 (N.D.Ill.1996) (memo.). "A single common issue may be the overriding one in the litigation, despite the fact that the suit also entails numerous remaining individual questions." Conte & Newberg § 4:25, at 172.

■■■ Under plaintiffs' theory, American Family breached its contracts with each prospective class member when it made payment on policyholders' claims based upon estimates either specifying the use of non-OEM crash parts or omitting particular repairs. This common issue is the predominant issue. If it is established at trial that American Family did not breach its contracts with policyholders by making payments based upon non-OEM crash parts or the omission of particular repairs, then the claims of all the prospective class members fail without further factual analysis. If it is determined that American Family's payment of claims based upon the inclusion of non-OEM parts or exclusion of particular repairs constitutes breach of contract for some or all of the prospective class members, then the trial court can proceed in the most expeditious and efficient way possible relative to any individual circumstances or issues that may exist. The predominance of the common issue is not defeated simply because "individual questions may remain after interpretation of the contract—questions of damages or possible defenses to individual claims". *Kleiner v. First Nat'l Bank,* 97 F.R.D. 683, 692 (N.D.Ga.1983) (analyzing predominance concurrently with commonality) (citing *Brown v. Cameron–Brown Co.,* 92 F.R.D. 32, 38 (E.D.Va.1981); *Ingram v. Joe Conrad Chevrolet, Inc.,* 90 F.R.D. 129, 131 (E.D.Ky.1981)); *but see Augustus v. Progressive Corp.,* No. 81308,

slip op. at ¶¶ 25–27, 2003 WL 155267, **4–5 (Oh.App.2003).[7]

 The object of Rule 52.08(b)(3) "is to get at the cases where a class action promises important advantages of economy of effort and uniformity of result without undue dilution of procedural safeguards for members of the class or for the opposing party." Conte & Newberg § 4:24, at 155 (quoting Kaplan, *Continuing Work of the Civil Committee: 1966 Amendments of the Federal Rules of Civil Procedure (I)*, 81 Harv. L.Rev. 356, 389–90 (1967)) (discussing the Federal counterpart to Rule 52.08). This is a case in which the trial court determined after rigorous analysis that the resources of both the plaintiffs and the judiciary can be conserved through class certification, without diluting American Family's procedural safeguards. American Family has not established that the trial court abused its discretion in coming to this determination for the class of insureds whose contracts are subject to Missouri law.

## VI.

This Court makes absolute the writ of prohibition, as modified.

BENTON, J., and RUSSELL, SHAW and JOYCE, Sp. JJ., concur.

WOLFF, J., concurs in separate opinion filed.

TEITELMAN, J., dissents in separate opinion filed.

LIMBAUGH, C.J., WHITE and LAURA DENVIR STITH, JJ., not participating.

MICHAEL A. WOLFF, Judge, concurring.

I concur in the principal opinion. I take the liberty of writing separately to expand on aspects of due process that will, if adhered to, serve to keep the class action viable and within reasonable bounds.

## The Class Action for Damages

A class action is a procedure for joining in a single proceeding a large number of persons with similar claims—where each claim usually involves a small amount of money. This joinder device holds potential for achieving justice for sizeable numbers of aggrieved persons who might otherwise go unrepresented and uncompensated. But there also is potential for class actions to be used oppressively—where, for instance, the cost of settling a group of marginal claims is

---

**7.** Under facts similar to those at bar, the court in *Augustus* found that the lower court did not abuse its discretion in denying class certification. The insurance policies at issue in *Augustus* required the insurer to restore damaged vehicles to pre-loss condition and *specifically allowed the use of non-OEM parts to do so*. After finding that "the determination of 'pre-loss condition' could only be made by individually examining each and every putative class member's vehicle" and by "determin[ing] what parts were utilized on each and every vehicle", the court affirmed the lower court's decision. *Augustus*, at ¶¶ 25–26, ¶ 29, 2003 WL 155267, ** 4–5. The court concluded that the case "presents far too many individual questions of fact which

outweigh the minimal common questions of fact." *Id.* at ¶ 28, 2003 WL 155267, *5.

The individual inquiries that may be necessary in the instant case do not defeat predominance. As stated previously, the trial court can resolve individual questions, particularly those relating to damages and defenses, after making a determination on the predominant issue. While the court in *Augustus* found that "it would be inconceivable to reason that an automobile is not returned to its 'pre-loss condition' because a non-OEM part is utilized in making a repair", we leave the determination of that predominant issue in this case to the trier of fact. *Id.* at ¶ 27, 2003 WL 155267, * 5.

more attractive to a defendant than the expense of litigating the merits.

Missouri's class action rule, Rule 52.08, is adopted nearly word-for-word from Rule 23 of the Federal Rules of Civil Procedure, which was amended in 1966 to provide for the kind of class action for damages—*i.e.,* money—that the class plaintiffs in this case have brought.

The 1966 federal revisions introduced the concept of the "opt-out" class. Missouri adopted its current version of the class action rule in 1972. Under the class action rule, representative plaintiffs may maintain an action for monetary relief on behalf of a group of persons similarly situated. The unnamed members of the class can benefit without doing anything affirmative to become litigants. Unless members of such a class opt out of the class, they are included in the class for purposes of relief, if the class prevails, and for *res judicata* purposes. This kind of class action for damages is intended to benefit "small claims held by small people—who for one reason or another, ignorance, timidity, unfamiliarity with business or legal matters, will simply not take the affirmative step" to get involved in litigation to vindicate their rights.[1]

In this case, plaintiffs' counsel estimates that each claim is worth $100 to $500. Counsel, through the representative named plaintiffs, seeks to represent policyholders of American Family Insurance in eight states. If the court allows the suit to proceed as a class action, all members who do not opt out will be deemed to be bound by whatever is done on their behalf by the named plaintiffs.

### The Requirement of Notice to the Class

A class action for damages is intended to have a binding *res judicata* effect on the members of the class. That means, quite simply, if American Family Insurance gets judgment in its favor, all members of the class who did not opt out of the class are bound by the judgment and cannot make the same claim in the future. It also means that where a judgment is entered in favor of the class, the class members cannot complain of its inadequacy. Where a class action is settled, however, class members do get notice and an opportunity to object to the settlement, but the trial court can approve the settlement over the objections of class members, and the class is bound. *See* Rule 52.08(e).

This *res judicata* application invites the question: how can a judgment bind a person who has not been named a party, has not participated in the suit, or, indeed, may not have known about it? The traditional answer is that the unnamed class member is "represented." *Compare Hansberry v. Lee,* 311 U.S. 32, 42, 61 S.Ct. 115, 85 L.Ed. 22 (1940), *with Supreme Tribe of Ben–Hur v. Cauble,* 255 U.S. 356, 41 S.Ct. 338, 65 L.Ed. 673 (1921).

The theory of the modern class action rule is that class members "ought to be informed as well as represented."[2]

The idea of notice, as prescribed in the class action rule, is that the best practicable notice will be given to members of the class who are not named as plaintiffs. This includes individual notice to all those whose names and addresses are known.[3]

1. Benjamin Kaplan, *Continuing Work of the Civil Committee: 1966 Amendments of the Federal Rules of Civil Procedure (I),* 81 HARVARD L.REV. 356, 398 (1967).

2. Kaplan, 81 HARVARD L.REV. at 394, n.148 (quoting Z. CHAFEE, SOME PROBLEMS OF EQUITY 230 (1950)).

3. The requirement of individual notice is found in Rule 52.08(c)(2), and provides that, in any class action maintained under Rule

As to those who are not known, publication is sufficient. *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. at 317–18, 70 S.Ct. 652, 94 L.Ed. 865 (1950). Because members of the class are supposed to receive the best notice practicable under the circumstances, publication should be done in such a way as to notify at least some members of the purported class. *See* Rule 52.08(c)(2). This requires selection of publications that class members are likely to actually read.[4] Most litigation is tied to a particular area or region of the country and, thus, geographical considerations become paramount when determining what media are appropriate for publication notice.[5] Most definitely, however, even the best possible notice by publication will fail to reach a number of class members. Further, while even individual notice by mail usually does not deliver actual notice to the entire class,[6] there is actual notice to a

substantial enough number of the members of the class to ensure that their interests—which are interests in common by definition—will be protected. In other words, a class member is protected not only by the representative plaintiffs, and the court itself, but also by the presence of actually notified class members. *See Mullane*, 339 U.S. 306, 70 S.Ct. 652.

Efficacy of the form of notice varies with the circumstances of the particular case. In this case, for instance, the members of the class all are or were customers of American Family Insurance. Notice by mail to their last known addresses will reach most of them. To use a contrasting example, individual notice would be virtually impossible in a class action on behalf of consumers of a particular product purchased at retail; as to those class members, notice by publication may well be the only means available.

---

52.08(b)(3), which includes an action for damages, "the court shall direct to the members of the class the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice shall advise each member that: (A) the court will exclude the member from the class if requested by a specified date; (B) the judgment, whether favorable or not, will include all members who do not request exclusion; and (C) any member who does not request exclusion may, if desired, enter an appearance through counsel."

Individual notice typically is done by mail and is consistent with the due process requirements articulated in *Mullane v. Central Hanover Bank & Trust*, 339 U.S. 306, 317–18, 70 S.Ct. 652, 94 L.Ed. 865 (1950).

**4.** *See* MANUAL FOR COMPLEX LITIGATION (THIRD) § 30.211 (1995)("Financial and legal journals or sections of newspapers, while useful to a degree, are not likely to be read by many members of the general public.").

**5.** *See Tylka v. Gerber Products Co.*, 182 F.R.D. 573, 578 (N.D.Ill.1998) (Nationwide notice not necessary to notify a minute percentage of

possible class members where the case arose from conduct in Illinois and where publication was concentrated in Illinois and the six states bordering Illinois).

**6.** It is not unusual for notice to be sent to a wrong, incomplete or former address. *See, e.g., Peters v. Nat'l R.R. Passenger Corp.*, 966 F.2d 1483, 1486–87 (D.C.Cir.1992)(notice adequate even though it used an incorrect zip code and omitted apartment number), and *Gross v. Barnett Banks, Inc. et al.*, 934 F.Supp. 1340, 1345 (C.C.M.D.Fla.1995)(notice sufficient even though sent to class member's former address even where class member had, on a prior occasion, attempted to notify defendant of current address; independent verification of class member's address not practicable where the class was large). Sometimes notices are not sent at all. *See Trist v. First Federal Savings & Loan Assoc. of Chester*, 89 F.R.D. 1, 3 (C.C.E.D.Pa.1980)(notice sufficient even though, due to clerical error, notice was not sent to 37 class members). When situations like these occur, the court has discretion to determine "what efforts to identify and notify are reasonable under the circumstances...." MANUAL FOR COMPLEX LITIGATION (THIRD) § 30.211 (1995).

Though Rule 52.08(c)(2) does not specify the timing of the notice to the class, it seems clear from the binding nature of the action that notice should be given *promptly* after an order is entered allowing the action to proceed as a class action.[7]

Prompt notice is necessary to effectuate the rule's provision giving class members the choice to opt out of the class. For example, in *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974), the Supreme Court noted that all class members whose names and addresses are ascertainable through reasonable effort are to receive the "best notice practicable" so that they will have the opportunity to decide whether to be class members before a judgment is entered that would be binding upon them. *Eisen,* 417 U.S. at 173, 94 S.Ct. 2140. In addition to giving notice early in the litigation, as the court directs, the plaintiff class representatives must bear the cost of notice. *Id.* at 177, 94 S.Ct. 2140.

It has become common for cases to be filed as class actions and to proceed for months and even years without notice to the class. It is difficult to see how class members' interests are before the court in any meaningful way before notice is given to the class. Often the first notice the class members get is that a "settlement" has been worked out on their behalf, and the class members can either take it or leave it.

At the point where lawyers agree on a settlement, there is a tension in the lawyer's role. Whether class action or not, the lawyer who has worked out a settlement with opposing counsel now becomes an advocate for "the deal" as well as an advocate for the client's interests. In class actions, this ethical tension may be particularly acute: an individual class member's interest may be $100 or $500 but the attorney's interest in class fees may be in the millions of dollars.[8] Thus, Rule 52.08(e) gives the trial court a role in protecting the interests of the members of the class.[9]

**Personal Jurisdiction as to Members of the Class**

With respect to class representatives and members of the class who are residents of the state of Missouri, notice that occurs late in the process, even after a tentative settlement is reached, does not seem offensive in terms of the court's personal jurisdiction over unnamed class members, though untimely notice may raise due process concerns. One of the explicit assumptions of the class action is that the trial judge will supervise the mat-

7. *See* 3 Alba Conte & Herbert Newberg, New-berg on Class Actions § 8:9 (4th ed. 2002)("There is no occasion for any notice until after the propriety of the class action has been determined, at least tentatively. But it seems obvious that if notice is to be effective—if class members are to have a meaningful opportunity to request exclusion, appear in the action, object to the representation, etc.—the invitation must go out as promptly as the circumstances will permit."). *See also* Manual for Complex Litigation (Third) § 30.211 (1995)("... notice should ordinarily be given promptly after the certification order is issued. Sometimes, as when parties are nearing settlement or developments indicate that it may be necessary to revise the certification, it may be reasonable to delay the notice temporarily.").

8. For example, in a challenged Alabama class action settlement, class members recovered about $100 each while attorneys' fees were estimated to be between $8 and 11.7 million. *Vermont v. Homeside Lending, Inc.,* 2003 VT 17, 826 A.2d 997, 2003 WL 367449 (Vt.2003).

9. Rule 52.08(e) provides that "[a] class action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs."

ter and will look out for the interests of the non-named class members. With respect to those who are residents of the state of Missouri, the presumption can be indulged that these residents are within the court's jurisdiction and, thus, a Missouri trial court would be authorized to exercise power over their interests in a way that the court would not be authorized to exercise personal jurisdiction over non-residents.

With respect to out-of-state class members, however, the concerns are jurisdictional. It may seem unusual to apply the due process limits on personal jurisdiction to actions where *plaintiffs* are to be brought before the court. Usually plaintiffs are volunteers. But in class actions, the class of unnamed plaintiffs from other states who are to be brought before the court are no more volunteers than nonresident *defendants* in the usual civil action.

Vermont's Supreme Court recently held that an Alabama judgment approving a settlement in a nationwide class action did not bind Vermont class members because the Alabama court lacked personal jurisdiction. *Vermont v. Homeside Lending, Inc.*, 2003 VT 17, 826 A.2d 997, 2003 WL 367449 (Vt.2003). Inadequate notice and representation precluded exercise of personal jurisdiction by the Alabama court. The Vermont court found that the notices, which specified that attorneys' fees would come out of class members' escrow accounts but failed to explain the amounts that would be deducted, did not provide enough information for class members to determine whether it would be economically beneficial for them to remain in the suit. Further, because incentive payments to class representatives exceeded the "fruits of the settlement," the court found that class representatives did not adequately represent class members' interests. The court also found that a conflict of interest

existed between the attorneys and class members where "[e]very dollar obtained by the class attorneys for their fees came from the accounts of the class members, making them adversaries...."

Our earliest notions of personal jurisdiction held that a state could not exercise jurisdiction beyond its borders to compel those outside the state to respond to process in the state. *See Pennoyer v. Neff*, 95 U.S. 714, 24 L.Ed. 565 (1877). The notion in *Pennoyer* was that exercise by a state beyond its borders was an affront to the sovereignty of the state whose resident or citizen was being summoned. These jurisdictional concepts were imposed with respect to absent *defendants* being haled before a domestic court. The strict territorial limits of *Pennoyer* have given way to a due process analysis based in part on a party's contacts with the forum state. *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

Although the jurisdictional limits have become flexible, they still are limits, particularly where a party—including an unnamed class member—has no contact with the forum state. In a class action, as the Vermont opinion suggests, members of the plaintiffs' purported class are in effect being summoned into the forum state in the sense that their interests are being affected and a judgment that will bind them is to be entered.

For a state court to apply its law to the claims of out-of-state parties in a class action suit, the Supreme Court has held that a state must have a "significant contact or significant aggregation of contacts" to the claims asserted by each member of the class. *Phillips Petroleum Co. v. Shutts et al.*, 472 U.S. 797, 821–22, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985)(citing *Allstate Ins. Co. v. Hague*, 449 U.S. 302, 312–13, 101 S.Ct. 633, 66 L.Ed.2d 521 (1981)). In *Shutts*, before the case

reached the Supreme Court, the Supreme Court of Kansas had determined that Kansas law should be applied to a class action suit involving some 28,000 royalty owners who resided in all 50 states, the District of Columbia and several foreign countries and possessed rights to leases for natural gas-producing land in 11 different states. *Shutts*, 472 U.S. at 799, 105 S.Ct. 2965. As in the present case, the law of the forum state, Kansas, conflicted with the law of a number of states connected to the litigation. *Id.* at 816–17, 105 S.Ct. 2965. The Supreme Court determined that Kansas law could not be used to bind nonresident participants in a nationwide class action. The Court cited conflicts in law in the various states where the leased property was located, and Kansas' lack of interest in claims unrelated to that state, combined with the notion that it was unlikely these nonresident parties expected Kansas law to control disputes over leases executed outside of Kansas. *Id.* at 822, 105 S.Ct. 2965.

The choice-of-law limits expressed in *Shutts* are similar to the personal jurisdiction limitations that flow from the due process analysis of *International Shoe* and its progeny.[10]

There is nothing, however, to prevent plaintiffs from another state from using the courts of Missouri to bring a lawsuit. In fact, the privileges and immunities clause of the United States Constitution, U.S. CONST. art. IV, sect. 2, forbids the state from prohibiting use of its courts by nonresidents.

In order for a court in Missouri to have jurisdiction in any meaningful sense, that is, to have before it the members of the class of plaintiffs to be represented, those purported plaintiff class members must receive notice of the pendency of the action.

Until such notice is sent, it is hard to see how the interests of the class are before the court. With respect to a class of persons outside the state of Missouri, giving notice late in the game—of a potential settlement worked out on their behalf—may be a jurisdictional insult.

In this case, all named plaintiffs appear to be Missourians. No out-of-state plaintiff is seeking recovery or seeking to represent a class of persons who reside in that named plaintiff's state. The principal opinion limits the class action to Missouri because of the differences in state laws to be applied to class members in the various states. Another way of looking at this same defect is to consider it as violating the class action rule requirement that claims of the named plaintiffs be "typical" of the claims of the class members. Rule 52.08(a)(3). The claims of Missouri plaintiffs that are based on Missouri law are not typical of purported class members in other states whose claims are based on the laws of their own states.

If a plaintiff from another state wishes to sue in Missouri courts, and to have Missouri courts apply the law of the plaintiff's own state to his claims and those of a class he represents, there is nothing wrong with that from a constitutional standpoint. However, there are no out-of-state named class representatives here. Missouri courts, therefore, have no business adjudicating claims of classes of nonresidents.

### Protecting the Interests of the In-state Class and the State of Missouri

The members of the class who are residents of the state of Missouri presumably are adequately represented and protected, under the class action rule, by the class

---

10. The *Shutts* case was the basis for the Vermont Supreme Court's decision in *Vermont v.* *Homeside Landing, Inc.,* regarding personal jurisdiction.

representatives as well as by the trial court.[11]

The state of Missouri, moreover, has an interest in the action as well. In virtually every consumer class action of this type, there are class members who cannot be notified and, thus, do not collect the damages that would be allocated to them. This pot of gold at the end of the rainbow should, in my view, escheat to the state as "unclaimed property". *See* section 447.010 et seq. (known as the Uniform Disposition of Unclaimed Property Act) and *In re Ancillary Adversary Proceeding Questions*, 89 S.W.3d 460 (Mo. banc 2002).

It seems to me that the state of Missouri, by the attorney general, has a right to intervene in an action of this kind to protect the interests of the state of Missouri itself, which ultimately should be the recipient of the unclaimed property. The presence of the state of Missouri, through its attorney general, is important not only to protect the interests of the state, but also to make sure that any settlement that is worked out with the defendant appropriately compensates the members of the class (including the class members whose interests will escheat to the state) and to make sure that the attorneys' fees that are awarded, as a portion of the total recovery, are reasonable in light of the recovery to the class. With broad power under the common law, the attorney general serves as an advocate for the State of Missouri

and its citizens. "[I]t is the role of the attorney general to protect the public interest." *State ex rel. Nixon v. American Tobacco Co., Inc.*, 34 S.W.3d 122, 135 (Mo. banc 2000). "If there were no other remedy for a great wrong, and public justice and individual rights were likely to suffer for want of a prosecutor capable of pursuing the wrongdoer and redressing the wrong, the courts would struggle hard to find authority for the attorney general to intervene in the name of the people." *Id.* (citing *State ex rel. McKittrick v. Missouri Public Service Comm'n*, 352 Mo. 29, 175 S.W.2d 857, 864–65 (1943)).

When an action is filed as a class action, the trial court ought to direct that notice be given to the attorney general so that such an intervention can be timely considered.

### The Merits of the Class Action Claim

Although it is desirable to get notice to the class members accomplished as promptly as possible, notice might be deferred until the viability of the claim for relief—as tested tentatively or finally by a motion to dismiss or for summary judgment—can be determined. In this case, that might be significant. An extended discussion of the merits is not needed at this point. It is sufficient to note that the merits of plaintiffs' contract claims are hotly contested.

---

**11.** The nature of a class action suit is such that, under Rule 52.08(a), the interests of unnamed class members are to be "fairly and adequately" protected by representative class members. It is the court's duty to consider whether the representatives are able to represent the class under Rule 52.08. *City of Excelsior Springs v. Elms Redevelopment Corp.*, 18 S.W.3d 53, 59 (Mo.App.2000). To aid the court in this endeavor, Rule 52.08(d)(2) provides the court with authority to issue orders requiring notice "for the protection of the members of the class" and to provide mem-

bers the opportunity to "signify whether they consider the representation fair and adequate, to intervene and present claims or defenses, or otherwise to come into the action." Rule 52.08(d)(2). *See also State ex rel. Byrd v. Chadwick*, 956 S.W.2d 369, 383 (Mo.App. 1997)("[T]he trial court should have reviewed whether it appeared that class counsel was adequate, that the named plaintiffs were adequate representatives of the class, that there is no apparent conflict of interest between the representatives and the class or among the class. . . .").

The proper interpretation of the insurance contracts is not before the Court in this proceeding. The interpretation may depend on applicable regulations of the state's department of insurance or on applicable case law precedents. It is desirable for the trial court to determine the viability of plaintiffs' contract theory before putting the named plaintiffs to the expense of giving notice to the class.

Any delay in notifying the class, because of the desirability of making this determination before giving notice to the class, seems more tolerable if the members of the class only are residents of Missouri, rather than of the several states whose residents the named plaintiffs seek to represent. A ruling adverse to the plaintiffs, on a motion to dismiss or for summary judgment, would not have *res judicata* effect as to the class, in the absence of notice, but the court's ruling would be precedent. As to unnamed class members in other states, to whom notice has not been sent, a Missouri court's ruling would have no *res judicata* effect and little, if any, value as precedent.

**Conclusion**

The class action is a highly useful procedural device for joinder of a large number of similar claims in a single proceeding. It is most appropriately available where there are a large number of small claims that make economic sense to pursue only as a class, not as individual claims. This procedural joinder device, highly useful for vindicating the rights of consumers, can be used abusively in some circumstances.

To avoid abuse of the procedure, trial courts should pay close attention to the rights of the unnamed members of the class and, particularly, the requirement of notice. When the focus is on the interests of the class, and balanced by a concern for the right of the defendant to an early determination of the viability of the claim, the class action is procedure through which justice can be achieved.

This Court's use of the writ, as expressed in the principal opinion, is consistent with the goal of achieving justice in this case. I therefore concur in the principal opinion.

RICHARD B. TEITELMAN, Judge, dissenting.

I respectfully dissent.

The principal opinion limits this class action to Missouri policyholders because of the differences in state laws to be applied to class members in the various states. Analysis of this question is appropriate, as section 507.070.1(3) requires that a class action involve "a common question of law or fact affecting the several rights and a common relief is sought." *See Phillips Petroleum v. Shutts,* 472 U.S. 797, 821, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985).

However, section 507.070.1(3) does not require that all questions of law or fact be common. As the leading treatise on class actions notes, there need be only a single issue common to all members of the class. *Newberg on Class Actions,* sec. 3:10, 272–274. The mere "existence of state law variations is not alone sufficient to preclude class certification." *Newberg on Class Actions,* sec. 4:25, 163. Here, as the trial court found, there will likely be a single predominant issue of breach of contract common to policyholders in all fourteen states. Possible violations of additional state insurance laws or regulations do not deprive this class of commonality.

Moreover, American Family seeks a writ of prohibition. "Prohibition is a discretionary writ, and there is no right to have the writ issued. Prohibition will lie only to prevent an abuse of judicial discretion, to avoid irreparable harm to a party, or to prevent exercise of extra-jurisdictional

power." *State ex rel. Linthicum v. Calvin*, 57 S.W.3d 855, 856–57 (Mo. banc 2001) (citations omitted). Interlocutory review of trial court error by writ of prohibition "should occur only in extraordinary circumstances." *State ex rel. Chassaing v. Mummert*, 887 S.W.2d 573, 577 (Mo. banc 1994). "If the error is one of law, and reviewable on appeal, a writ of prohibition is not appropriate." *Id.*

The State of Missouri has trial judges of the finest character, steeped in a tradition of both justice and discretion. Our trial judges do not lightly undertake rulings such as the class certification in this case, and there was no quick ruling here. The trial court certified the class only after exhaustive analysis of the potential claims and variations of the laws of the fourteen states. In an eight-day hearing, the trial court heard the testimony of seventeen witnesses and viewed hundreds of exhibits. The trial court concluded that this case is fundamentally a simple claim for breach of contract—law that is universal to all fourteen states. The trial court decided that the various nuanced differences among the fourteen states would not be determinative—that they presented false conflicts. A decision as to what question of law or fact will ultimately predominate is a difficult one—and one appropriately left within the discretion of the trial court. This Court is not yet reviewing a full record. The plaintiffs in this class action may prevail or fail according to a question of law or fact common to the fourteen states, or not, but that result is far from clear at this early stage.

"The trial court abuses discretion if its order is clearly against the logic of the circumstances, is arbitrary and unreasonable, and indicates a lack of careful consideration." *State ex rel. Ford Motor v. Messina*, 71 S.W.3d 602, 607 (Mo. banc 2002). This is far from such a case.

There is no compelling reason why this issue cannot be raised on direct appeal with a great deal more clarity.

The certification of this multi-state class action serves the purposes of section 507.070, by avoiding an impracticable volume of cases. The repetition of this claim in thirteen more states will hardly conserve the resources of the parties or the judiciary.

I would quash the writ.