Nicholas H. SMITH, et al., Appellant–Respondents,

v.

AMERICAN FAMILY MUTUAL INSURANCE COMPANY, Respondent–Appellant.

Nos. WD 68586, WD 68610.

Missouri Court of Appeals, Western District.

May 5, 2009.

Application for Transfer to Supreme Court Denied June 23, 2009.

Application for Transfer Denied Sept. 1, 2009.

Michael E. Waldeck, Esq., Overland Park, KS for appellant.

Edward D. Robertson, Esq., and Mary D. Winter, Esq., Jefferson City, MO, for respondent.

Before DIV I: LOWENSTEIN, P.J., SMART and HOWARD, JJ.

HAROLD L. LOWENSTEIN, Judge.

## I. INTRODUCTION

The case at bar is a class action suit by auto insurance policyholders for breach of contract against their insurance company. Nicholas Smith and Amy and Bryce Johnson, on behalf of themselves and a class of Missouri plaintiffs (collectively "Plaintiffs" or "Class"), appeal the trial court's grant of defendant American Family Mutual Insurance Company's ("American Family") motion for judgment notwithstanding the verdict ("JNOV"). The trial court conditionally denied American Family's motion for a new trial pursuant to Rule 72.01(c). American Family cross-appeals, asserting evidentiary and instructional error as the basis for a new trial, and asking, in the alternative, that the class be decertified.

## II. FACTUAL BACKGROUND

The background of this case was set forth in *State ex rel. American Family Mutual Insurance Company v. Clark*, 106 S.W.3d 483, 485 (Mo. banc 2003), in which the Supreme Court of Missouri certified the class of Missouri plaintiffs in this action:

American Family writes private passenger automobile property and casualty insurance in fourteen states. The policy promises to "pay loss in money or repair or replace damages or stolen property." In 1985, American Family established the current guidelines that adjusters follow when writing estimates for replacement parts. For vehicles in the latest three model years, adjusters are instructed to specify Original Equipment Manufacturer ("OEM") replacement parts for repairs. When writing estimates for vehicles of an earlier model year, adjusters are encouraged to specify the use of non-OEM crash parts or salvage OEM parts. *OEM parts are those parts made by the original automobile manufacturers or suppliers; non-OEM parts are made by outside companies without access to the design specifications of the OEM parts.* American Family now uses computer software to write the estimates. The software automatically specified non-OEM crash parts for automobiles of certain model years.

The same computer program identifies repairs the vehicle will require. The estimating software systematically excludes from estimates certain repairs deemed necessary by industry standards.[1] Such repairs include seatbelt

1. I–CAR, a non-profit organization composed of insurance companies, automobile manufac-

safety tests, wheel alignments, adjusting the aim of headlamps, and corrosion protection.

Plaintiffs claim that American Family breached its contracts with policyholders to restore their vehicles to pre-loss condition by devising and implementing a practice that results in payment of claims based on (1) the systematic specification of "inferior" non-OEM crash parts for repairs and (2) the systematic omission of specific "necessary" repairs from estimates. Plaintiffs brought the action on behalf of themselves and "all others nationwide, or in the alternative all others in the state of Missouri," who were insured by American Family, made a claim for vehicle repairs pursuant to their policy, and received payment based on an estimate prepared or approved by American Family that included non-OEM crash parts and/or did not include specified "necessary" repairs.

(Emphasis added.)

The Circuit Court of Jackson County had certified a class of nationwide plaintiffs. On American Family's application for a writ of prohibition, the Supreme Court certified the class only as to Missouri policy holders, granting the writ of prohibition as to American Family policy holders outside the State of Missouri. *Id.* at 489.

Plaintiffs' two count petition came to trial in February 2007. After a three-week trial, the jury returned a verdict for the Class on both counts. On Count I, the non-OEM, or aftermarket, parts breach of contract claim, the jury found damages in the amount of $13,118,325. On Count II, the omitted repairs breach of contract claim, the jury found damages in the amount of $4,274,112. Plaintiffs also sought declaratory and injunctive relief.

American Family moved for JNOV, or, in the alternative, a new trial. The trial court granted the motion for JNOV as to both counts and conditionally denied the motion for a new trial. The Class appealed and American Family cross-appealed.

## III. DIRECT APPEAL

Appellant Class raises four points. In their first point, the Class contends the trial court erred in granting American Family's motion for JNOV, asserting that the Class had made a submissible case as to both of its claims. In their second point, the Class claims the trial court incorrectly interpreted Missouri's Aftermarket Rule, 20 100–1.050 ("the Rule"), as applied to their claims, and in their third point, assert that they made a submissible case under a correct interpretation of the Rule. In their final point, the Class asks that if this court reinstate the jury's verdict, the case be remanded to the trial court with directions that the court hear Plaintiffs motions for attorneys fees and costs, declaratory and injunctive relief, and prejudgment interest.

### A. GRANT OF JNOV

Plaintiffs first contend that the trial court erred in granting American Family's motion for JNOV on both the aftermarket parts claim and the omitted repairs claim, contending that the Class made a submissible case for both counts. This court reviews the trial court's grant of a defendant's motion for JNOV to determine whether the plaintiff made a submissible case. *Payne v. Cornhusker Motor Lines, Inc.,* 177 S.W.3d 820, 832 (Mo.App. 2005). Whether a submissible case was

---

turers, collision repair facilities and automotive suppliers, has developed industry repair standards since 1979. American Family does not provide for all the repairs I–CAR recommends.

made is a question of law to be reviewed *de novo. Id.* This court views the evidence and all reasonable inferences to be drawn therefrom in the light most favorable to the plaintiffs. *Id.* "There is a presumption that favors reversal of a JNOV granted to a defendant, unless the favorable evidence and inferences are so strongly against the plaintiff as to leave no room for reasonable minds to differ as to the result." *Leo Journagan Constr. Co. v. City Utils. of Springfield,* 116 S.W.3d 711, 723 (Mo.App. 2003).

### 1. AFTERMARKET PARTS CLAIM

Plaintiffs' first count alleged that "American Family breached its contracts with each prospective class member when it made payment on policyholders' claims based upon estimates ... specifying the use of non-OEM crash parts." *Clark,* 106 S.W.3d at 488. Accordingly, to make a submissible claim of breach against American Family, Plaintiffs were required to show that: (1) American Family paid class members the cost of aftermarket parts and that these aftermarket parts were inferior in like, kind, and quality to the OEM parts; (2) by doing so, American Family breached its insurance contracts with class members; and (3) as a result, class members were damaged.

In granting American Family's motion for JNOV, the trial court concluded that Plaintiffs failed to establish that American Family had breached its contracts or that Plaintiffs were damaged. The trial court found, as to both elements, a failure of proof.

### A. BREACH

American Family's contractual obligation to its policyholders arises from two sources: (1) the American Family insurance contract; and (2) the regulations of the Missouri Department of Insurance, here, specifically the Missouri Aftermarket Parts Rule, 20 CSR 100–1.050(2) ("the Rule"). Under American Family's standard policy, the insurer is obligated to repair or replace the policyholder's damaged vehicle. American Family's practice is to satisfy this contractual duty by cutting the insured a check based on an estimate of damage written by its adjustors. American Family's contractual duty is met when the insured receives the check.

The Rule requires that where insurers elect to pay for non-OEM replacement parts, the parts must be "at least like kind, and quality in terms of fit, quality, and performance to the original manufacturer parts they are replacing." 20 SCR 1004(2)(D) 2.A. In resolving an apparent ambiguity in the meaning of the term "original" in the Rule, the trial court noted that the Missouri Department of Insurance ("the MDI") has interpreted the Rule as creating a legal obligation that insurers "pay the cost necessary to return an insured vehicle to its condition before the damage; that is, to it's pre-loss condition." The trial court concluded that "pre-loss condition" referred to "the part on the vehicle when the damage giving rise to the need for repair occurred."

In granting American Family's motion for JNOV as to Count I, the trial court found that the Plaintiffs failed to prove that American Family breached its duty to pay and that the class members were thereby damaged. The trial court held that "[t]o show class-wide breach and damages, Plaintiffs were ... required to compare the aftermarket parts to the pre-loss condition of parts the aftermarket parts were replacing on the class vehicle" and that "Plaintiffs' evidence failed to show that any aftermarket part was inferior to any part it actually replaced on any class vehicle or was inferior to any part on any class vehicle for which an aftermarket part

was specified as part of the repair estimate." The court concluded that the Plaintiffs failed to present sufficient evidence from which a reasonable juror could find that American Family breached its contracts with all members of the class.

The trial court's requirement that Plaintiffs "compare the aftermarket parts to the pre-loss condition of the parts" to be replaced is at odds with the Supreme Court's analysis of the predominant issue in *Clark*. In *Clark*, American Family claimed that, to show class-wide breach, Plaintiffs were required to establish "that all of the damaged parts at issue in this case for all class members were OEM parts in good condition *immediately prior to the respective covered losses*" and that this level of individualized proof defeated the predominancy requirement. 106 S.W.3d at 488 (emphasis added). The Court rejected this argument, noting that the predominant issue in the case was whether "American Family breached its contracts with each prospective class member when it made payment on policyholders' claims based upon estimates ... *specifying the use of non-OEM crash parts.*" *Id.* (emphasis added). Once the jury passed upon this predominant issue, the trial court could "proceed in the most expeditious and efficient way possible relative to any individualized circumstances or issues that may exist." *Id.* The Court concluded that "the trial can resolve individual questions, particularly those relating to damages and defenses, after making a determination on the predominant issue." *Id.* at 489 n. 7.

Pursuant to the Rule, American Family was required to pay to return the car to its pre-loss condition but that did not require American Family to replace a non-OEM crash part with an OEM crash part. If the damaged part was OEM, its pre-loss condition was OEM, and the quality, fit and performance of the pre-loss part was

OEM. The appearance of the pre-loss OEM part; that is, whether it was old, rusted or dinged—is immaterial to that analysis. Under the analysis in *Clark*, the sole inquiry as to pre-loss condition is whether the part to be replaced was in fact an OEM part or an aftermarket part.

The Supreme Court found that the question of pre-loss condition was not the predominant question but, rather, an issue of damages and defenses to be addressed after the jury rendered its verdict on the predominant question. The trial court's conclusion, in granting American Family's motion for JNOV, that Plaintiffs were required to compare the aftermarket part to the pre-loss condition of each part replaced in order to show that American Family breached its contracts with the Plaintiffs, was error

■ To meet the burden of the predominant question, Plaintiffs were required to establish that aftermarket parts were universally inferior to OEM parts; that American Family had a practice of basing estimates for cars older than three years on the cost of aftermarket parts; and that, in so doing, American Family breached its contract to pay to return the car to its pre-loss condition. American Family does not contest that it based its estimates on the use of aftermarket parts or that it based its payment to the insured on that estimate. Thus, the inquiry then becomes whether Plaintiffs established by sufficient evidence that aftermarket crash parts are not of like kind and quality to OEM crash parts.

In the case at bar, Plaintiffs sought to establish that aftermarket parts are universally inferior, or not of like kind and quality to OEM parts through the testimony of expert witnesses. Paul Grigio, an engineering consultant, testified that he had visited aftermarket stamping plants all over the world. Grigio testified that, be-

cause aftermarket parts are reverse-engineered—where the specifications are derived from an OEM part rather than the specifications that govern the manufacture of the OEM part—the aftermarket manufacturing process can never attain the specifications and tolerances of an OEM part. Grigio testified that aftermarket parts "will be of lesser quality in the dimension, dimensional area, and possibly in the structural area."

Dr. Kristin Wood, a professor of mechanical engineering at the University of Texas at Austin, testified to the limitations of the reverse engineering process. He defined reverse engineering as the "process of copying a part or product dimensionally and functionally." Wood explained that the Certified Automotive Parts Association ("CAPA"), a body created by the insurance industry, "defines the standards for the manufacture and reverse engineering of imitation parts." Wood emphasized that like kind and quality went further than simple appearance or fit, that function and performance were the benchmarks. He testified that there were "real world consequences" of the use of aftermarket parts. He also asserted that aftermarket parts are inferior in performance because CAPA does not always require that safety features on certain parts, such as hoods, be reverse-engineered into the aftermarket parts.

Based on his experience with reverse engineering, Wood stated that flaws in the reverse engineering process create flawed parts. Wood concluded that, based on his analysis and review of materials, "it is highly unlikely that CAPA-certified parts or imitation parts will be like kind and quality to OEM genuine parts."

Even American Family's expert, Dr. Jason Hertzberg, an engineering consultant, admitted that in "salt spray" tests, aftermarket parts consistently developed "red rust" while OEM parts did not. He testified further that the steel in OEM parts was of a higher carbon, higher strength, and higher hardness value.

Viewing the evidence and the inferences arising from the evidence in a light most favorable to the jury's verdict, Plaintiff's evidence established that, because of the nature of the engineering, production, and materials, aftermarket parts were inferior in fit and performance and, therefore, not of like kind and quality to OEM parts. That Plaintiffs sought to establish that non-OEM, aftermarket parts are categorically inferior because of the engineering and manufacturing process and the materials employed, not that individual parts were individually defective, does not undermine their proof. In that Plaintiffs' theory was one of universal inferiority, the trial court erred in finding that the Plaintiffs were required to demonstrate that any particular aftermarket crash part was specifically inferior to the corresponding OEM part. The Plaintiffs presented sufficient evidence for a reasonable juror to conclude that aftermarket parts are not of like kind and quality to OEM parts and that American Family breached its contacts with its policyholders when it paid to return the damaged vehicle to pre-loss condition based on the nature and cost of aftermarket parts.

### B. DAMAGES

■ In addition to finding Plaintiffs failed to prove breach, the trial court found that Plaintiffs failed to show that the Class suffered any damage. Under Plaintiffs' theory, the breach of contract occurred upon payment via a check to the insured of an insufficient sum, not the actual repair of the vehicle. This theory is consistent with American Family's practice of cutting a check for the amount of the loss to the insured and permitting the insured to have

the car repaired rather than managing the repair process itself.

The trial court, however, found that the Plaintiffs could not establish that the class was damaged because "[t]here could be no showing of actual damage ... unless the aftermarket part that was inferior to the existing part in its pre-loss condition was actually used to repair the vehicle's damage." In so concluding, the trial court relied on *Avery v. State Farm Mutual Automobile Insurance Co.,* 216 Ill.2d 100, 296 Ill.Dec. 448, 835 N.E.2d 801 (2005).

In *Avery,* plaintiffs brought a class action against the State Farm Mutual Automobile Insurance Company ("State Farm") for breach of contract, consumer fraud, and deceptive acts. *Id.,* 296 Ill.Dec. 448, 835 N.E.2d at 810. As here, the plaintiffs' case centered on the use of aftermarket parts to repair the insureds' vehicles. *Id.* The breach of contract claim was tried to a jury, which returned a verdict for the plaintiffs, while the remainder of the claims received a bench trial. *Id.,* 296 Ill. Dec. 448, 835 N.E.2d at 815. The appellate court affirmed the judgment but reversed a portion of the damages. *Id.,* 296 Ill.Dec. 448, 835 N.E.2d at 818–19.

The Supreme Court of Illinois reversed the plaintiffs' judgment as to all counts. *Id.,* 296 Ill.Dec. 448, 835 N.E.2d at 863. In reversing the breach of contract claim, the court found that the plaintiffs had failed to establish damages. *Id.* The court noted that the plaintiffs claimed two classes of damages: (1) direct or "specification" damages; and (2) consequential or "installation" damages. *Id.,* 296 Ill.Dec. 448, 835 N.E.2d at 830. The specification damages were calculated as the cost difference between the OEM part and aftermarket part specified. *Id.* The court found that specification damages were insufficient to establish actual damages because plaintiffs alleged that the breach occurred from State Farm's "*use* of non-OEM parts in *repairs.*" *Id.,* 296 Ill.Dec. 448, 835 N.E.2d at 831. The trial court defined the plaintiff class as insureds "who had non-OEM parts *installed* on their vehicles." *Id.* The Court surmised that the plaintiffs attempted to show specification damages to maintain the predominance of common questions of law and fact required of a class action. *Id.* "If, in keeping with the complaint and the class definition, loss did not occur until non-OEM parts were *installed,* plaintiffs would need to show which class members' vehicles had actually been repaired with non-OEM parts...." *Id.* Such a showing would require individualized proof of each class member's vehicle and repair, thus defeating the predominance requirement. *Id.,* 296 Ill.Dec. 448, 835 N.E.2d at 832.[2]

Here, Plaintiffs' theory was that the breach occurred when American Family cut a check to its policyholders based on an estimate specifying aftermarket parts, not upon the *use* of aftermarket parts, as in *Avery.* Plaintiffs' damages were the aggregate difference between the cost of the OEM crash part and the cost of the aftermarket crash part. Plaintiffs' petition asserts that "American Family materially breached the terms of its standardized policy contract with Plaintiffs and Class members by, among other things, *paying* for inferior imitation crash parts." This theory is consistent with American Family's practice of paying the insured a sum based on a repair estimate. Whether the vehicle was repaired at all, or, if repaired, what materials used in the repair, was left up to

---

**2.** The court invalidated the installation damages finding that the evidence plaintiffs offered in support was "so speculative and uncertain that awarding damages based on this evidence constituted an arbitrary deprivation of property in violation of State Farm's due process rights." *Avery,* 296 Ill.Dec. 448, 835 N.E.2d at 832.

the policyholder. If the policyholder chose to use OEM parts where non-OEM parts were specified, the policyholder was free to pay the difference. Likewise, if the policyholder could negotiate an OEM part for the price of an aftermarket part, negotiate a better labor rate, or repair the vehicle himself or herself, the benefit inured to the insured. American Family's obligation was fulfilled upon the payment, not repair of the vehicle, as in *Avery*.

The trial court's ruling asserting that Plaintiffs could only show damages upon establishing whether an aftermarket part was actually used was in error. The plaintiffs in *Avery* asserted breach upon use of aftermarket in repairs; thus, specification of the part was insufficient to establish use. Here, Plaintiffs asserted breach upon payment; the specification of an aftermarket part was relevant to the amount American Family paid the insured to repair the vehicle. In *Avery*, State Farm's obligation was satisfied upon repair of the vehicle to pre-loss condition. Here, American Family's obligation was satisfied upon payment; thus, breach occurred at payment of an insufficient sum to return the vehicle to pre-loss condition and damages were suffered upon payment. Accordingly, the verdict of the jury should be reinstated as to Count I.

## 2. OMITTED REPAIRS CLAIM

 In granting American Family's motion for JNOV on the verdict in Count II, the trial court concluded that:

> Proof of damages from omitted repair procedures requires a showing that the omitted repair procedures were actually not done and that, as a result, the repair to all the class vehicles was not done completely satisfactory. Plaintiffs presented no evidence that the repairs were not actually done, only that some of the estimates did not contain an amount

specifically designated for one or more of these repair procedures. Plaintiffs presented no evidence of repair shop industry standards in Missouri that would have permitted an inference that failure to list the repairs procedures on an estimate would result in the repair procedure not being done for the amount of the estimate.

Once again, under the Plaintiff's theory, the breach occurred at the payment to the insured based on the estimate. That these repairs were not specified on the estimate meant that the estimate did not include the labor and materials necessary to perform the repairs. Thus, American Family did not pay sufficient funds to return the car to pre-loss condition. Whether the repairs were actually done is not relevant to whether American Family breached their contract with the insureds by failing to include sufficient time and materials to pay for all necessary repairs to return the car to pre-loss condition.

Although the trial court is correct that none of Plaintiffs' witnesses gave testimony regarding industry standards in Missouri that would permit an inference that the failure to specify the repairs on the estimate would result in the repair procedure not being done for the amount on the estimate, American Family's own witnesses gave testimony that, if believed, bridged this gap.

American Family's experts testified that the estimate drives the repair procedures the shop will perform. If the repair is not specified on the estimate, and time and materials allotted to perform that procedure, then the repair shop does not perform that repair.

Specifically, Tony Passwater, American Family's auto repair collision expert, testified as to the industry standard for the final estimate to reflect the work actually performed:

Q ... And down further on the third paragraph of this article you wrote, you say: "If the operations"—second sentence—"If the operation is needed on a specific repair, if there are materials and/or supplies necessary to perform it, it needs to be listed as being performed." And that's your opinion, isn't it?

A Yes.

Q That's not just your opinion, that's the industry practice in this regard, isn't it?

A As for the whole industry?

Q It is industry standard for the final bill estimate to reflect work actually performed on the vehicle, right?

A Based on what the local requirements are, yes.

James Coussen, American Family's Customer Repair Program Inspector, testified that in his experience, if the repair is not specified on the estimate then it was not performed:

Q ... When you are looking at what work has been performed on the car to repair it, the guideline, the information you have is your final estimate, correct?

A Yes.

Q So if we wanted to know if somebody did a piece of work of a certain kind, when you and I were sitting across from each other, we'd look at the final estimate and all the supplements ... to see what work has been performed, correct?

A Yes, sir.

Q And if, in fact, work has been omitted, like aiming headlights, things of that nature, it wouldn't be on the repair estimate in the first place, would it, sir?

A No.

Q So if somebody wanted to complain about the fact that something wasn't done, we don't have any basis to determine that because it isn't written on the estimate, is it?

A In a court, you're correct. Yes.

If the jury believed the testimony of Passwater and Coussen, it could have reasonably inferred that if the repair was not specified on the estimate then the auto repair shop did not perform the repair. Hence, the testimony bridges the gap in the Plaintiffs' expert testimony and would provide the jury with a reasonable basis to conclude that the class members suffered $4,274,112 in damages. The circuit court erred in granting American Family's motion for a JNOV as to Count II.

■ American Family presents several reasons why they believe the Plaintiffs failed to make a submissible case. First, American Family claims that not every vehicle required all ten of the omitted repairs and that evidence in the record supports this claim. In making this argument, however, American Family concedes that the Plaintiffs' expert, DeRung, testified that the ten omitted repairs "would be uniformly necessary regardless of the age or condition of the vehicle."

Viewing the evidence in a light most favorable to Plaintiffs, this evidence is enough to establish that each vehicle required the ten omitted repairs. Rather than disputing that this evidence is in the record, American Family simply points to the conflicting testimony of its witness refuting DeRung's testimony. Under the applicable standard of review, the defendant's evidence is irrelevant.

Second, American Family claims that the circuit court was correct to grant its motion for JNOV because there was no evidence that it breached the contracts. American Family reasons that since there

is no evidence in the record establishing that it was unreasonable for it to expect that the omitted repairs were being performed by Missouri body shops then it could not be guilty of breaching its obligation to return the vehicles to their pre-loss condition.

■ Even assuming that American Family's "ignorance" would excuse its failure to allocate time and materials for the performance of these repairs and that such "ignorance" was a defense to the breach of contract claim, the record was replete with evidence from which a reasonable juror could find that American Family knew the omitted repairs were required but left undone. Specifically, Coussen, American Family's Customer Repair Program adjuster, and Passwater, the auto repair expert, both testified that it was industry standard for the final estimate to reflect the work to be performed, and if the work was not included in the estimate, it meant that the repair was not performed.

### B. Interpretation of the Term "Original" in 20 CSR 100–1.050(2)

■ The trial court's order declaring the meaning of the Missouri Aftermarket Parts Rule found that two specific sections of the Missouri Rule, subsections (D)2.A. and (D)2.B., created an ambiguity because the word 'original' as used in those subsections, could mean the part of the vehicle when first manufactured or it could mean the part on the vehicle when the damage triggering the need for repair occurred. Resolving the ambiguity, the Court held that 'original' in subsection (D)2.A and (D)2.B means the part on the vehicle when the damage giving rise to the need for repair occurred. Thus, the regulatory phrase "like, kind and quality to the original part" means a part that is of like, kind and quality to the part being replaced.

Plaintiffs contend that the trial court erred in failing to interpret the term "original" to refer to the OEM part on the car when it was first manufactured. This court cannot conclude that the trial court erred in interpreting the Rule consistent with its application by the MDI. Moreover, in that this court determined above, that in the context of this case, the sole inquiry into the original, or pre-loss, condition of the part that was replaced was whether it was OEM part or an aftermarket part, this court cannot conclude that Plaintiffs were prejudiced by the trial court's order. Point denied.

### C. Motion for Injunctive and Declaratory Relief, Prejudgment Interest, and Costs

In their next point, Plaintiffs claim that the circuit court erred in overruling their motions for injunctive and other declaratory relief, prejudgment interest, and attorneys' fees. The record reflects that these motions were denied because the court granted American Family's motion for JNOV: on remand, the circuit court should reconsider these motions in light of the reinstatement of the verdicts.

### IV. Cross Appeal

American Family raises five points on cross appeal: one point asserting the trial court erred in failing to decertify the class, three points asserting instructional error, and two points asserting evidentiary error. As the trial court conditionally denied American Family's motion for a new trial pursuant to Rule 72.01(c), American Family's claims of error are taken up by this court.

### A. Motion to Decertify

American Family first claims that the circuit court erred in overruling its motion to decertify Class because, in violation of

Rule 52.08(b), the evidence at trial established that the common issues of fact and law did not predominate over the individual issues of fact and law. Specifically, American Family claims that the common issues did not predominate over the individual issues at trial because, in order to establish that American Family breached its insurance contracts with each class member, the plaintiffs would be required to show the pre-loss condition of each vehicle. American Family contends that the Supreme Court's finding in *Clark* only applied to the class's preliminary certification and did not hold that the class could not be decertified at some later date. American Family makes this point as to both counts.

The predominance requirement " 'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.' " *Dale v. DaimlerChrysler Corp.*, 204 S.W.3d 151, 174 (Mo.App.2006) (quoting *Craft v. Philip Morris Cos.*, 190 S.W.3d 368, 382 (Mo.App. E.D.2005)). To satisfy this requirement, not every single issue must be common to all class members. *Id.* In fact, the predominance requirement can be satisfied if there is one single common issue that is the overriding issue in the litigation. *Id.* This single predominant issue need not even be dispositive of the case. *Id.* " [T]he fundamental question is whether the group aspiring to class status is seeking to remedy a common legal grievance.' " *Id.* (quoting) *Carpe v. Aquila, Inc.*, 224 F.R.D. 454, 458 (W.D.Mo.2004).

American Family concedes that the Supreme Court of Missouri has already ruled that the predominant issue in the case was the common issue of whether or not American Family breached its contract when it made payments based on an estimate that included the cost of aftermarket parts or omitted particular repairs:

Under plaintiffs' theory, American Family breached its contracts with each prospective class member when it made payment on policyholders' claims based upon estimates either the use of non-OEM crash parts or omitting particular repairs. This common issue is the predominant issue. If it is established at trial that American Family did not breach its contracts with policyholders by making payments based upon non-OEM crash parts or the omission of particular repairs, then the claims of all the prospective class members fail without further factual analysis. If it is determined that American Family's payment of claims based upon the inclusion of non-OEM parts or exclusion of particular repairs constitutes breach of contract for some or all of the prospective class members, then the trial court can proceed in the most expeditious and efficient way possible relative to any individual circumstances or issues that may exist.

*Clark*, 106 S.W.3d at 488. The question of whether American Family breached its contracts with its policyholders remained the predominant issue throughout the trial.

Under Rule 52.08(c)(1), the circuit court is required to make a determination on class certification "[a]s soon as practicable after the commencement of an action." Because the trial court is required to do this before the benefit of full discovery or the actual presentation of evidence, Rule 52.08(c)(1) states that the court's certification order is "conditional" and authorizes the circuit court to alter or amend it before "the decision on the merits." *See Gen. Te. Co. of Sw. v. Falcon*, 457 U.S. 147, 160, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). Rule 52.08, therefore, charges the circuit court with the duty to monitor its class certification order in light of the evidentiary developments in the

case. *Gardner v. First Am. Title Ins. Co.,* 218 F.R.D. 216, 217 (D.Minn.2003). In that regard, Rule 52.08(c)(1) provides an "exception to the law of the case doctrine, which holds that 'when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Id.* (internal citation omitted). The circuit court's ruling on whether or not to decertify a class will be upheld unless the trial court's decision constitutes an abuse of its discretion. *Hervey v. City of Little Rock,* 787 F.2d 1223, 1227 (8th Cir.1986).

The Supreme Court ruled that the predominate issue—whether American Family breached its contracts with the Class when it paid policyholders based on the cost of aftermarket parts—was the common issue. *Clark,* 106 S.W.3d at 488. Nonetheless, American Family claims that the Court's opinion merely upheld the circuit court's preliminary class certification and did not expressly hold that the circuit court could never decertify the class.

■ Although the circuit court is tasked with monitoring the case to determine if the class certification is still proper in light of developments in the case, the trial court here did not abuse its discretion in denying American Family's repeated motions to decertify the class. The issue of whether American Family breached its contracts with its policyholders continued to be the predominant common issue throughout the trial. American Family argues the class should have been decertified because, in order to establish breach, plaintiffs had to compare each individualized vehicle's pre-loss condition to the vehicle's post-loss condition to determine whether aftermarket parts were, in fact, used to repair the vehicle, and to determine whether the omitted repairs were actually performed. As this court has found that the inquiry into the pre-loss condition is limited to a determination of whether the part replaced was an OEM part or an aftermarket part (an issue to be addressed after the jury passed judgment on the predominant issue) and that post-loss condition is immaterial to the issue of whether or not American Family breached its contracts by failing to pay its policyholders a sum sufficient to return the car to pre-loss condition. American Family's contentions are without merit.

■ American Family next claims that the class should have been decertified because the evidence at trial established that the class representatives could not adequately represent the class. Even assuming, *arguendo,* that American Family's claims were correct, decertification does not necessarily follow. The Supreme Court of the United States has held that when a circuit court properly certifies a class and only later it appears that the named plaintiffs were not class members or otherwise inappropriate class representative, decertification is not required. *See Falcon,* 457 U.S. at 158 n. 13, 102 S.Ct. 2364. "In such a case, the class claims would have already been tried, and provided initial certification was proper ... the claims of the class members would not need to be mooted or destroyed because subsequent events or the proof at trial had undermined the named plaintiffs' individual claims." *E. Tx. Motor Freight Sys. Inc. v. Rodrigues,* 431 U.S. 395, 406 n. 12, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977). Indeed, the class's victory before the jury would seem to rebut any such argument. *Sirota v. Solitron Devices, Inc.,* 673 F.2d 566, 572 (C.A.N.Y.1982).

Point denied.

### B. Instructional Error

In its second point, American Family contends that the trial court erred in submitting Jury Instruction No. 10, the ver-

dict director for the plaintiffs' aftermarket parts claim, because it misstated the law. In its third point, American Family challenges Instruction No. 12, the verdict director on the omitted repairs claim. In its fourth point, American Family challenges the damages instruction, Instruction No. 15.

"Whether or not a jury was properly instructed is a question of law." *Twin Chimneys Homeowners Ass'n v. J.E. Jones Constr. Co.*, 168 S.W.3d 488, 497 (Mo.App.2005). "The test is whether the instruction follows the substantive law and can be readily understood by the jury." *Moore ex rel. Moore v. Bi–State Dev. Agency*, 87 S.W.3d 279, 293 (Mo.App.2002). When reviewing claimed instructional error, this court views the evidence most favorably to the instruction, disregards contrary evidence, and reverses where the party challenging the instruction shows that the instruction misdirected, misled, or confused the jury, and there is a substantial indication of prejudice. *Id.* "To determine whether a jury is misdirected by instructions, the reviewing court must consider the entire set of instructions as a whole." *Buckallew v. McGoldrick*, 908 S.W.2d 704, 709–10 (Mo.App.1995). This court will reverse for instructional error "only for defects of substance with substantial potential for prejudicial effect." *Smith v. Kovac*, 927 S.W.2d 493, 499 (Mo. App.1996).

### 1. INSTRUCTION No. 10

American Family takes inconsistent positions with regard to Instruction 10. In the response to an argument made by Plaintiffs/Class, American Family stated: "For purposes of appeal, then, Instruction 10 was the proper instruction. Instruction 10 finally determined the facts Appellants were required to prove to make a submissible case on Appellant's aftermarket part breach of contract claim." But in the cross appeal, American Family raises numerous alleged errors in Instruction 10. Regardless of these inconsistent positions, this court will address American Family's asserted error.

Instruction 10 provided:

Your verdict must be for plaintiffs' class on the issue of after market parts if you believe:

First, defendant paid class members the cost of after market parts that were categorically and universally inferior in like, kind and quality to the original part in terms of fit, quality and performance, and

Second, because of such failure, defendant's contract obligations were not performed, and

Third, class members were thereby damaged.

The term original part means the part on the vehicle when the damage giving rise to the need for the repair occurred.

American Family first complains that the term "pre-loss condition" was omitted from the instruction. American Family contends that the instruction should have required the jury to find that the amount paid was insufficient to return the car to pre-loss condition.

During the instruction conference, American Family urged that some reference to pre-loss condition be included in the verdict director. However, when the parties decided to split the single verdict director into two different instructions— one verdict director for the aftermarket parts claim (Instruction 10) and one verdict director for the omitted repairs claim (Instruction 12)—American Family agreed that references to pre-loss condition would be in a separate stand-alone instruction and not be included in the individual ver-

dict directors. To that end, Instruction 7 provides:

In these instructions, the phrase "restore to pre-loss condition" means to return the vehicle to the condition that it was before the accident. Aftermarket parts may be used to restore a vehicle to pre-loss condition if they are of like kind and quality to the parts that existed on the vehicle prior to the damage.

Additionally, American Family's converse instruction, Instruction 11 provided:

Your verdict must be for the defendant on the class plaintiffs' aftermarket parts claim if you believe that any of the aftermarket parts paid for by defendant to restore class vehicle to pre-loss condition were of like kind and quality to the parts that existed on class member vehicles prior to the damage.

■ American Family waived any error with regard to the omission of the phrase "pre-loss condition" when it agreed to address pre-loss condition in a standalone instruction. Moreover, in determining whether the instruction misdirected the jury, as claimed by American Family, the body of instructions is considered and read together. *Ahrens & McCarron, Inc. v. Mullenix Corp.,* 793 S.W.2d 534, 541 (Mo.App.1990). This court, in reading Instructions 7, 10, and 11 together does not finds that the jury was not misdirected or confused by the verdict director in light of its companion instructions. American Family's claim is denied.

American Family next argues that the instruction should have required the jury to find that American Family breached its contract to *every* class member before a verdict for the class was warranted. This contention is at odds with the Missouri Supreme Court's contemplation that the predominant question of breach be tried before the jury and that "[i]f it is determined that American Family's payment of claims based on the inclusion of non-OEM parts or exclusion of particular repairs constitutes breach of contract *for some or all of the prospective class members,* then the trial court can proceed in the most expeditious and efficient way possible relative to any ... questions of damages or possible defenses to individual claims." *Clark,* 106 S.W.3d at 488 (internal quotations omitted) (emphasis added). American Family's claim is without merit.

■ American Family next contends that Instruction 10 misstates the law in stating that breach occurred when American Family paid the insured the cost of the aftermarket part. American Family contends that the breach could only occur upon the use of an aftermarket part to repair the vehicle, and, as such, the instruction was defective. As discussed above, Plaintiffs' theory, supported by sufficient evidence, was that American Family's practice was to pay the insured the cost of the repairs. The breach occurred at the time of payment, not upon repair. The instruction did not misstate the law. Point denied.

### 2. INSTRUCTION No. 12

In its third point, American Family raises as error Instruction 12, the verdict director for the omitted repairs claim. American Family argues that the verdict director should have required the jury to find that the repairs were omitted for each and every class member. Again, this contention flies in the face of the Supreme Court's reasoning as to the predominant issue. Point denied.

### 3. INSTRUCTION No. 15

In its fourth point, American Family argues that the damages instruction, Instruction 15, provided for an award of specification damages that is not recog-

nized under Missouri law. American Family is again making the argument that damages had to be linked to the pre-loss condition. The issue of pre-loss condition—limited to a determination of whether the part replaced was an OEM part or an aftermarket—is an issue of damages and defenses that the Supreme Court found the trial court could address after the predominant issue of breach was determined. American Family's argument was addressed and rejected in the analysis of the grant of American Family's motion for JNOV above. The damages instruction was proper under both Plaintiffs' theory of the case and the Supreme Court's certification. Point denied.

## C. EVIDENTIARY ERROR

American Family next challenges the trial court's admission of the testimony of Plaintiffs' experts: Paul Grigio, Dr. Kristen Wood, Gerald DeRungs, and Cary Mack. Consistent across American Family's claims is that the experts' testimonies lacked foundational support and were "in contravention of and disconnected from" the trial court's order regarding the Rule. American Family attacks the testimony of Gerald DeRungs on numerous fronts and contends that Cary Mack's testimony as to specification damages was improper under Missouri law.

■■■ The exclusion or admission of expert testimony is a matter within the discretion of the trial court, and this court will not reverse the trial court absent a clear abuse of that discretion. *Day Adver. Inc. v. Devries & Assoc., P.C.*, 217 S.W.3d 362, 365 (Mo.App.2007). This court will only interfere with "trial court's exercise of discretion only when it has been manifestly abused; that discretion is abused only when the trial court's ruling runs against the logic of the circumstances then before the court and is so arbitrary and unreason-

able as to show a lack of careful consideration and shock the sense of justice." *Kasper v. Helfrich*, 421 S.W.2d 66, 69 (Mo. App.1967).

Plaintiffs contend that American Family is attempting to renew the battle of the experts under the guise of admissibility. The record indicates that the issues American Family now raise as error were carefully considered by the trial court. The qualifications of the experts and the foundation of their testimony, as well as the damages model proposed by Mack, were the subject of voluminous pleadings and myriad discussions during the eight year pendency of this suit.

■■■ This case, as much as any, was a battle of the experts. Both sides presented the testimony of numerous experts to support their contentions and refute those of their opponent. Courts are wary about wading into such a battle and routinely decline to pass upon the credibility of witnesses or "second-guess whom the jury choose to believe." *Davolt v. Highland*, 119 S.W.3d 118, 127 (Mo.App.2003).

Upon review of the record and the expert testimony of, and discussions regarding, Plaintiffs' experts, this court cannot conclude that the trial court abused its discretion in admitting the testimony of Plaintiffs' witnesses. Plaintiffs' experts' testimony was the subject to careful consideration by the trial court, and this court cannot find an abuse of discretion in the trial court's disposition of these issues.

Point denied.

## V. CONCLUSION

The grant of American Family's motion for JNOV was error. The jury's verdict is to be reinstated. In accordance with the Supreme Court's certification of the class, the trial court is instructed to "proceed in the most expeditious and efficient way pos-

sible relative to any individual circumstances or issues that may exist," *Clark,* 106 S.W.3d at 488. The trial court shall entertain Plaintiffs' motions for injunctive and declaratory relief, prejudgment interest, and attorney's fees. American Family's cross-appeal is denied.

The judgment of the trial court as to the causes of Counts I and II is reversed and remanded to reinstate the judgment rendered on the jury verdicts. Having taken up and denied the points raised in American Family's cross-appeal, this court, pursuant to Rule 72.01(c)(1), affirms the trial court's denial of American Family's motion for a new trial. The cause is remanded to the trial court for the sole purpose of taking up and deciding those matters mentioned in the preceding paragraphs.

All Concur.

James G. Krispin, Esq., St. Louis (Clayton), MO, for appellant.

Michael E. McCausland, Esq., Kansas City, MO, for respondent.

Before VICTOR C. HOWARD, P.J., JOSEPH M. ELLIS and ALOK AHUJA, JJ.