**Gary W. OGG and Janice Ogg, Appellants,**

v.

**MEDIACOM, LLC., Respondent.**

**Nos. WD 73877, WD 73969, WD 74002.**

Missouri Court of Appeals, Western District.

Aug. 7, 2012.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 2, 2012.

Application for Transfer Denied Nov. 20, 2012.

James Orlofsky, for Appellants.

Jerome T. Wolf, for Respondent.

Before Division One: JOSEPH M. ELLIS, Presiding Judge, JAMES E. WELSH, Judge and ALOK AHUJA, Judge.

JOSEPH M. ELLIS, Judge.

Members of a class action lawsuit for trespass appeal from a judgment entered by the Circuit Court of Clay County granting Mediacom, LLC's motion to decertify Appellants' class. Appellants also appeal from a separate judgment entered by the Circuit Court of Clay County denying their motion for prejudgment interest on the damages awarded to class representatives Gary and Janice Ogg. For the following reasons, the judgment decertifying the class is affirmed, and the judgment denying the Oggs' motion for prejudgment interest is reversed.

This class action arose out of a trespass claim Gary and Janice Ogg filed against Mediacom, LLC ("Respondent") in 2001 after they discovered Respondent installing fiber optic' cable on their property. In 2002, Respondent filed a motion for summary judgment arguing that it had the authority to install its cable on the Oggs' property because it had secured, by way of written licenses from the Missouri State Highway and Transportation Commission ("the Commission") and Platte Clay Electric Cooperative, Inc., the right to use the pre-existing highway right-of-way and prescriptive easement on the Oggs' property. In 2003, the trial court granted Respondent's motion for summary judgment.

In *Ogg v. Mediacom, L.L.C.*, 142 S.W.3d 801, 817 (Mo.App.2004), we reversed the trial court's grant of summary judgment for Respondent and remanded the case for further proceedings. In doing so, we held that the license granted to Respondent by the utility company exceeded the scope of the utility company's existing prescriptive easement on the Oggs' property and, therefore, did not give Respondent the authority to install its cables on the Oggs' property without their permission. *Id.* at 810. Additionally, we found that the Commission had no authority to grant Respondent the right to use state highway rights-of-way to install its cables on the Oggs' property. *Id.* at 816.

On remand, an amended motion for class certification was filed. On April 14, 2006, the Circuit Court of Clay County granted Appellants' motion to certify a class of approximately 1,400 landowners in a tres-

pass action against Respondent. The circuit court defined the class as:

All owners of property in the State of Missouri: (1) who have had cable owned by [Respondent] placed on their property, and (2) who are not within the boundaries of any cable franchise granted to [Respondent], and (3) who have not reached an agreement with [Respondent] granting permission for the cable to be placed on their property, but (4) excluding any employees, officers or directors of [Respondent].

Appellants Gary and Janice Ogg were appointed class representatives, and the trial court subsequently ordered Appellants and Respondent to each identify and submit 25 test cases (50 cases total) from within the certified class.[1]

In 2008, the trial court set the Oggs' claim for trial. On March 9, 2009, a trial proceeded solely on the issue of damages resulting from Respondent's trespass on the Oggs' property.[2] On March 18, 2009, the jury returned a verdict of $8,863.50 (933″ at $9.50 per foot) in compensatory damages and $35,000 in punitive damages in favor of the Oggs. The trial court entered its judgment accordingly. On June 23, 2009, Appellants filed a motion to amend the judgment to include prejudgment interest. On July 31, 2009, the trial court denied Appellant's motion for prejudgment interest, finding that Appellants' damages were not liquidated in that the amount of damages was not readily ascertainable.

On October 21, 2009, Appellants filed a motion for summary judgment on the claims of the 47 test case members. On June 11, 2010, Respondent filed a motion to decertify the class, asserting, in pertinent part, that the class was unmanageable in that the common issues of the class did not predominate over the individual issues of the class members, as is required under Rule 52.08(b)(3). On October 15, 2010, a hearing was held on the Appellants' motion for summary judgment and Respondent's motion to decertify the class, and the matters were taken under advisement.

On April 22, 2011, the trial court granted Respondent's motion to decertify the class. In doing so, the trial court found that Appellants failed to establish the typicality and predominance requirements necessary for class certification.[3] As to the predominance requirement, the trial court concluded that "individual issues overwhelm any issues common to the class in at least three respects: Standing, liability, and damages." Appellants timely filed their notice of appeal from the judgment decertifying the class and the judgment denying their request for prejudgment interest.

In their first three points on appeal, Appellants assert that the trial court erred in decertifying the class because the issues of standing, liability, and damages, as identified by the trial court, do not

---

1. The trial court ordered the parties to identify 50 test cases. However, one class member was identified by both parties, reducing the number of test cases to 49. Appellants later moved to remove two other test cases upon discovering those two class members did not have Respondent's fiber optic cable installed on their property, reducing the number of test cases to 47.

2. The trial court found that, based upon our opinion in *Ogg*, there was no issue as to liability and that Respondent was liable for trespass as a matter of law with respect to the Oggs' trespass claim.

3. Appellants do not address the trial court's finding that Gary and Janice Ogg, as class representatives, do not meet the typicality requirement. Therefore, we do not address that finding on appeal.

predominate over the issues common to the class. "Whether an action should proceed pursuant to Rule 52.08 as a class action rests within the sound discretion of the circuit court." *State ex rel. McKeage v. Cordonnier*, 357 S.W.3d 597, 599 (Mo. banc 2012). Thus, "[t]he circuit court's ruling on whether or not to decertify a class will be upheld unless the trial court's decision constitutes an abuse of its discretion." *Smith v. Am. Family Mut. Ins. Co.*, 289 S.W.3d 675, 689 (Mo.App. W.D.2009). "An abuse of discretion occurs if the circuit court's decision is clearly against the logic of the circumstances, is arbitrary and unreasonable, and indicates a lack of careful consideration." *McKeage*, 357 S.W.3d at 599. (internal quotation omitted).

■ Appellants assert that the trial court erred in decertifying the class action on the basis that the class did not satisfy the predominance requirement. Rule 52.08(a) requires the party seeking certification to establish the following four prerequisites:

(1) the class is so numerous that joinder of all members is impracticable,

(2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

*See also Hope v. Nissan N. Am., Inc.*, 353 S.W.3d 68, 74 (Mo.App. W.D.2011). "These requirements are commonly referred to as numerosity, commonality, typicality, and adequacy." *Hope*, 353 S.W.3d at 74. Additionally, the party seeking certification must also prove that the class action is maintainable. *See* Rule 52.08(b). Here, the trial court initially found the class action was maintainable pursuant to Rule 52.08(b)(3), which provides that:

An action may be maintained as a class action if ... the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

Rule 52.08(b)(3) is known as the predominance requirement.

■ "The predominance requirement tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Smith*, 289 S.W.3d at 688 (internal quotation omitted). "The predominance requirement does not demand that every single issue in the case be common to all the class members, but only that there are substantial common issues which predominate over the individual issues." *State ex rel. Am. Family Mut. Ins. Co. v. Clark*, 106 S.W.3d 483, 488 (Mo. banc 2003) (internal quotation omitted). "The predominant issue need not be dispositive of the controversy or even be determinative of the liability issues involved." *Id.* (internal quotation omitted). "A single common issue may be the overriding one in the litigation, despite the fact that the suit also entails numerous remaining individual questions." *Id.* (internal quotation omitted).

■ "To classify an issue as common or individual, a court looks to the nature of the evidence required to show the allegations of the petition." *Hope*, 353 S.W.3d at 81. "If the same evidence on a given question will suffice for each class member, then it is common; if the evidence on the question varies from member to member, then it is an individual issue." *Id.* "Thus, to the extent that the same evidence will suffice for each member to make a prima facie showing as to a partic-

ular cause of action, the commonness makes class treatment appropriate." *Id.*

■ Appellants assert the trial court erred in decertifying the class because Appellants satisfy the predominance requirement in that a common issue predominates—that Respondent placed its fiber optic cable across each class member's respective property without their permission. The trial court concluded, however, that this common issue did not predominate over individual issues of standing, liability, and damages.

With respect to standing, the trial court found that "in a trespass action, standing lies with one who had lawful possession of the property at the time the trespass occurred" and, therefore, standing posed an individual issue because it would require "individual examination by the Court of each prospective class member's deed as well as any other documentation needed to support their assertion of lawful possession of the property at the time the trespass occurs." Appellants contend that there would be no difficulty determining who owned the property at the time the cable was installed and further assert that the issue of standing "highlights the need for a class action" because a legal question exists as to whether the trespass claim belongs to the landowner when the cable was installed, the current landowner, or both.

In its motion to decertify and at the hearing on the motion, Respondent put forth evidence that title searches conducted for the 47 test case class members revealed 21 test case class members could not establish ownership at the time Respondent installed its cable. In its order certifying the class, the trial court was concerned that "[t]itle searches may be required in cases in which the property has been bought and sold during the relevant time frame" and that such "issues involved in identifying the class members ... may create manageability problems." Thus, the test cases confirm the trial court's original concerns about the class's manageability and support its conclusion that individual examination of each class member's deed would be necessary in order to establish ownership of the property at the time Respondent installed its cable.

Although Appellants now aver that a legal question exists as to whom the trespass claim belongs, their motion for summary judgment suggests otherwise. In their motion for summary judgment, Appellants stated that Respondent "is correct that [Appellants'] claim for diminution in value—the $9.50 per foot—is a claim that took place when the cable was built" and that they would not seek such damages for the 21 test case class members that did not own the property at the time of installation. Thus, Appellants acknowledged that the trial court will have to make a determination of who owned the property at the time Respondent installed its cables.

And while Appellants assert there would be little difficulty in establishing who owned the property at the time of installation, such an assurance does not negate the trial court's finding that, at some point, it would be faced with the task of examining the deeds of approximately 1,400 class members to establish standing. Therefore, the trial court's finding that the issue of standing presented an individual issue that would overwhelm the proceedings and predominate over issues common to the class was not unreasonable or arbitrary.

■ As to the issue of liability, the trial court concluded that "the key question ... is not the presence of [Respondent's] fiber optic cable, but whether [Respondent] had the authority (or rather, the permission of one who had the power to grant it) to place this cable on, over or under each piece of property." To answer

this key question, the trial court found that it would have to determine whether each class member had:

(1) Fee simple ownership of land in Missouri, (2) outside the boundaries of any cable franchise granted to [Respondent], (3) upon which [Respondent] had place fiber optic cable owned by it or its subsidiaries, (4) without permission from the landowner, and (5) outside the scope of any applicable written or prescriptive easement associated with the property.

Thus, the trial court concluded the issue of liability would require the court to make several individual determinations that would predominate over any issues common to the class.

Appellants assert that such concerns are misplaced in that the class can be divided into three simple categories: (1) those who have cable on state highway rights-of-way, (2) those who have cable off state highway rights-of-way pursuant to prescriptive (unwritten) utility easements, and (3) those who have cable off state highway rights-of-way pursuant to written utility easements. Appellants contend that once the class is divided into these three categories, class member liability does not present an individual issue because *Ogg* effectively determines Respondent's liability with respect to categories (1) and (2). With respect to category (3), Appellants admit that *Ogg* does not address Respondent's authority pursuant to written utility easements; nonetheless, Appellants aver that determining Respondent's liability with respect to such class members simply requires interpretation of a handful of standardized forms.

Appellants' reliance on *Ogg*, however, is misplaced. Our analysis in *Ogg* pertained specifically to Respondent's placement of fiber optic cable on the Oggs' property; thus, we made no determinations as to Respondent's liability with respect to the other class members. 142 S.W.3d at 807–17. In fact, our analysis in *Ogg* only exemplifies how the evidence necessary to establish whether Respondent had the authority to place its cable on each class member's respective property will vary from class member to class member and, thus, supports the trial court's determination that liability is an individual issue.

In *Ogg*, we had to determine whether Respondent was entitled to summary judgment on the Oggs' trespass claim based upon the fact that Respondent had obtained licenses from the Commission and a utility company to use the state highway right-of-way and utility poles on the Oggs' property to install its fiber optic cables. 142 S.W.3d at 807–08. To determine whether Respondent had the authority to install its cable pursuant to the utility's prescriptive easement on the Oggs' property, we noted that "each claim to a prescriptive easement must be determined on its own peculiar facts." *Id.* at 809. Thus, to determine Respondent's authority to use the utility's prescriptive easement, we examined, in depth, the scope of the existing prescriptive easement on the Oggs' property as well as the licensing agreement between Respondent and the utility company. Likewise, in determining whether the license Respondent obtained from the Commission gave Respondent the authority to install its cables in the highway right-of-way, we had to examine the deed granted to the State by the Oggs' predecessor in title. *Id.* at 811. Therefore, determining Respondent's authority to place its cable on the Oggs' property required examination of several instruments and circumstances unique to the Oggs and their property.

Our analysis in *Ogg* shows that determining Respondent's liability with respect to each class member would entail a close examination into each class member's

claim. Thus, the same evidence will not suffice to establish Respondent's liability as to each class member, making liability an individual issue. *See Hope,* 353 S.W.3d at 81.

Appellants further aver that the trial court decertified the class based upon speculation that individual issues might arise because Respondent failed to present any actual evidence of individual issues that have arisen since the class was certified. However, the record establishes that, following discovery conducted on the 47 test cases, Respondent presented evidence that 21 of the test case class members could not prove ownership of the property at the time Respondent installed its cable. Additionally, Respondent presented evidence that 12 of the test case class members entered into express written easements with utilities, which Respondent contends contain broad enough language that would permit Respondent's use of those easements. In support of its contention, Respondent provided the court with multiple written utility easements and pole attachment agreements.

Based upon such evidence, the trial court concluded the class was no longer maintainable because the court would have to examine various instruments with respect to each individual class member. "Missouri courts consistently recognize a certified class may subsequently be modified or decertified later before a decision on the merits." *Id.* at 79 (Mo.App.W.D. 2011). "Rule 52.08, therefore, charges the circuit court with the duty to monitor its class certification order in light of the evidentiary developments in the case." *Smith,* 289 S.W.3d at 688–89. Thus, in decertifying the class, the trial court was exercising its duty to monitor the manageability of the class in light of the evidentiary developments that occurred during the discovery conducted on test cases.

Furthermore, to the extent that Appellants contend Respondent presented no evidence that the class had become unmanageable, Appellants, not Respondent, bear the burden of establishing that all requirements for class certification are met, including the predominance requirement. *Epstein v. Villa Dorado Condominium Ass'n Inc.,* 316 S.W.3d 457, 460 (Mo.App. E.D.2010). Although Missouri courts have not addressed who bears the burden of proof in a motion to decertify, several federal courts have. And because Rule 52.08 is essentially identical to its federal counterpart, Rule 23 of the Federal Rules of Civil Procedure, Missouri courts frequently look to interpretations of Federal Rule 23 when interpreting Rule 52.08. *Hope,* 353 S.W.3d at 75. Federal courts addressing the issue have held that, even in the face of a motion to decertify, the party seeking class certification bears the burden of demonstrating all requirements of class certification are met. *See Marlo v. United States Postal Servs., Inc.,* 639 F.3d 942, 947 (9th Cir.2011); *E. Maine Baptist Church v. Union Planters Bank, N.A.,* 244 F.R.D. 538, 541 n. 3 (E.D.Mo. 2007) (stating that "the burden of proof is identical" with respect to motions to certify and motions to decertify); *Ellis v. Elgin Riverboat Resort,* 217 F.R.D. 415, 419 (N.D.Ill.2003) (stating that on a motion to decertify the class, "[t]he party seeking class certification ... bears the burden of producing a record demonstrating the continued propriety of maintaining the class action"). Thus, as the party seeking class certification, Appellants bore the burden of proving that the class satisfied the predominance requirement in light of the evidence that resulted from the 47 test cases.

Hence, it was not unreasonable or arbitrary for the trial court to decertify the class on the basis that individual determinations would have to be made with re-

spect to each class member that would then predominate over the class's common issues. Therefore, the court did not abuse its discretion in granting Respondent's motion to decertify the class on the basis that the individual issues of class member standing and liability would make the class unmanageable. Accordingly, we need not reach Appellants' third point on appeal addressing whether the court erred in finding damages presented an individual issue. Points I and II denied.

 In their fourth point on appeal, Appellants assert that the trial court erred in denying their motion for prejudgment interest on the amount of damages awarded to the Oggs.

At the outset, it is important to understand that Appellants did not pursue prejudgment interest pursuant to § 408.040,[4] which provides:

> In tort actions, interest shall be allowed on all money due upon any judgment or order of any court from the date of judgment is entered by the trial court until full satisfaction.... In tort actions, if a claimant has made a demand for payment of a claim or an offer of settlement of a claim, to the party, parties or their representatives, and to such party's liability insurer if known to the claimant, and the amount of the judgment or order exceeds the demand for payment or offer of settlement, then prejudgment interest shall be awarded, calculated from a date ninety days after the demand or offer was received, as shown by the certified mail return receipt, or from the date the demand or offer was rejected without counter offer, whichever is earlier. In order to qualify as a demand or offer pursuant to this section, such demand must:

> (1) Be in writing and sent by certified mail return receipt requested; and

> (2) Be accompanied by an affidavit of the claimant describing the nature of the claim, the nature of any injuries claimed and a general computation of any category of damages sought by the claimant with supporting documentation, if any is reasonably available; and

> . . . .

> (4) Reference this section and be left open for ninety days.

Appellants acknowledge they did not comply with the procedures set forth in § 408.040 to recover prejudgment interest on a tort claim. However, they contend that they fall within an exception to that rule because Respondent derived a benefit from the trespass and the amount of damages flowing therefrom was readily ascertainable.

 "As a general rule, prejudgment interest is not recoverable on a tort claim. But, like all general rules in law, this rule has exceptions. Where the defendant's tortious conduct confers a benefit upon the defendant, prejudgment interest may be recovered by the plaintiff on his claim." *Vogel v. A.G. Edwards & Sons, Inc.*, 801 S.W.2d 746, 757 (Mo.App. E.D. 1990). Respondent does not contest that it benefitted from its trespass upon the Oggs' property. Furthermore, in *Ogg*, we found that Respondent installed its fiber optic cables "solely for the benefit of Mediacom and its shareholders." 142 S.W.3d at 806. Thus, Appellants "could seek prejudgment interest despite [their] failure to follow the demand procedure set forth in Section 408.040." *Rois v. H.C. Sharp Co.*, 203 S.W.3d 761, 766 (Mo.App. E.D.2006).

---

4. All statutory references are to RSMo Cum. Supp.2009, unless otherwise noted.

■ Section 408.020 [5] allows prejudgment interest on liquidated claims after demand for payment has been made. "As a general rule, damages are liquidated when the amount due is fixed and determined or readily ascertainable by computation or a recognized standard." *Jablonski v. Barton Mut. Ins. Co.*, 291 S.W.3d 345, 350 (Mo.App. W.D.2009) (internal quotation omitted). "[D]amages may be ascertainable even if there is a dispute over monetary value or the parties' experts compute different estimates of the loss." *Jablonski*, 291 S.W.3d at 350.

Appellants contend that the Oggs' damages were readily ascertainable because appraisals were given by expert witnesses as to the loss in fair market value to the Oggs' property and the jury returned a verdict consistent with the comparable fiber optic easement transactions their experts presented at trial. Respondent contends, however, that the Oggs' damages were not readily ascertainable because Appellants sought damages pursuant to a "corridor theory" that had never been used to determine trespass damages in Missouri.

■ Respondent's contention is without merit. The jury was instructed that it must award the Oggs "such sum as you may find from the evidence to be the difference between the fair market value of their property before the trespass and its fair market value after the trespass." This was the proper measure of damages. The fact that one of the Oggs' experts testified as to a "corridor theory" for determining the *amount* of damages does not change the proper *measure* of damages. " 'The mere fact that a party denies liability or defends a claim against him, or even the existence of a bona fide dispute as to the amount of the indebtedness, does not preclude recovery of interest.' " *Columbia Mut. Ins. Co. v. Long*, 258 S.W.3d 469, 480 (Mo.App. W.D.2008) (quoting *Twin River Constr. Co. v. Pub. Water Dist. No. 6*, 653 S.W.2d 682, 695 (Mo.App. E.D.1983) (quoting 47 C.J.S. *Interest & Usury*, § 21, at 62)).

■ The Oggs filed their petition for damages for trespass on April 24, 2001. "The general measure of damages for trespass is the difference in the value of the plaintiff's property immediately before and immediately after the trespass or the cost of restoration, whichever is less." *Hostler v. Green Park Dev. Co.*, 986 S.W.2d 500, 506 (Mo.App. E.D.1999); *see also* MAI 4.02. From the time the suit was filed, the standard for measuring the damages was recognized by all parties, even though Respondent denied liability. Once liability was established, the measure of damages was readily ascertainable. *Vogel*, 801 S.W.2d at 758 ("[O]nce liability is established, the measure of damages … is readily ascertainable."); *Rois*, 203 S.W.3d at 766 ("Once the trial court determined which, if any, of the sales constituted a breach, the measure of damages was readily ascertainable. While it might have proved difficult for [the plaintiff] to state with specificity what these profits were, they were not required to perform an exact calculation in order for the claim to be liquidated.").

5. Section 408.020 provides:
 Creditors shall be allowed to receive interest at the rate of nine percent per annum, when no other rate is agreed upon, for all moneys after they become due and payable, on written contracts, and on accounts after they become due and demand of payment is made; for money recovered for the use of another, and retained without the owner's knowledge of the receipt, and for all other money due or to become due for the forbearance of payment whereof an express promise to pay interest has been made.

As noted *supra*, § 408.020 allows prejudgment interest on liquidated claims only after demand for payment has been made.

> The demand need not be in any certain form, but it must be definite as to amount and time. In the absence of a demand for payment prior to filing a lawsuit, the filing of the suit itself is sufficient to constitute a demand. Further, the petition need not make a specific request for prejudgment interest. This Court has held that a petition which prays that the court grant such other relief as may be proper is sufficient.

*Rois,* 203 S.W.3d at 767 (internal citations and quotation omitted). In this case, the Oggs made no formal demand prior to filing suit on April 24, 2001. Accordingly, the Oggs were entitled to prejudgment interest at the statutory rate of 9% on the actual damages from April 24, 2001 until the date of judgment on March 18, 2009. Appellants' Point IV is granted.

The judgment denying the Oggs' request for prejudgment interest is reversed and remanded to the trial court for an award of prejudgment interest not inconsistent with this opinion. The trial court's judgment decertifying the class action is affirmed, and the cause is remanded to the trial court for further proceedings.

All concur.